ORIGINAL

James L. Martin, ISB No. 4226
MOFFATT, THOMAS, BARRETT, ROCK &
        FIELDS, CHARTERED
101 S. Capitol Blvd., 10th Floor
Post Office Box 829
Boise, Idaho  83701
Telephone  (208) 345-2000
Facsimile  (208) 385-5384
jlm@moffatt.com
19-460

Patrick E. Bailey (SBN 86875)
Jonathan S. Morse (SBN 74812)
Carolyn J. Shields (SBN 169911)
BAILEY & PARTNERS
2828 Donald Douglas Loop North
Second Floor
Santa Monica, California 90405-2959
Telephone:  (310) 392-5000
Facsimile:  (310) 392-8091

Attorneys for Plaintiffs Ronald N. Tutor
and Tutor-Saliba Corporation

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RONALD N. TUTOR; an Individual; and TUTOR-SALIBA CORPORATION, a California Corporation, <br><br>            Plaintiffs, <br><br> vs. <br><br> CITY OF HAILEY, IDAHO, a Municipal Corporation; BOARD OF TRUSTEES OF THE FRIEDMAN MEMORIAL AIRPORT AUTHORITY; and FRIEDMAN MEMORIAL AIRPORT AUTHORITY, <br><br>            Defendants. | Civil No. 02-475-S-BLW <br><br> **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

STATEMENT OF FACTS ....................................................................................... 1

LEGAL ANALYSIS .................................................................................................. 4

    **A.**    Federal Statutes Preclude the Airport Authority from Imposing or
Enforcing the Access Restriction at Issue in This Case ....................................... 4

    **B.**    The Federal Aviation Regulations, Part 161, Also Preclude the
Airport Authority from Unilaterally Imposing the Access Restriction
at Issue ..................................................................................................................... 6

    **C.**    Defendants' Access Restriction Is Subject to the Airport Noise and
Capacity Act, Codified at 49 USC Section 47521 et seq. ("ANCA") .............. 10

          **1.**    Congress's intention to make ANCA applicable to access
restrictions other than noise restrictions is clear, and "that is
the end of the matter." ................................................................................... 10

          **2.**    Even if ANCA's applicability to access restrictions other than
noise restrictions were ambiguous, a court is required to defer
to the agency's interpretation of the statute. ............................................. 11

          **3.**    The FAA's construction that the statutory language "any other
access restriction" means any access restriction other than a
noise restriction is a permissible construction and entitled to
deference. ........................................................................................................ 11

          **4.**    Conclusion:  ANCA applies to defendants' access restriction. ........... 12

    **D.**    Plaintiffs Have Standing To Obtain an Injunction To Preclude
Enforcement of the Illegal Access Restriction ................................................... 12

    **E.**    Defendants Have No Basis To Assume that the FAA Would Approve
the Access Restriction at Issue, and the Restriction Would Likely Be
Disapproved ........................................................................................................... 15

CONCLUSION ......................................................................................................... 17

# TABLE OF CASES AND AUTHORITIES

## Cases

Aircraft Owners & Pilots Association v. Port Authority of New York,
305 F. Supp. 93 (E.D.N.Y. 1969) ........................................................................... 14

Archibald v. Pan Am World Airways, Inc.,
60 F.2d 14 (9th Cir. 1972) ..................................................................................... 14

Bratton v. Shiffrin,
635 F.2d 1228 (7th Cir. 1980) ............................................................................... 14

Cedarhurst Air Charter, Inc. v. Waukesha County,
110 F. Supp. 2d 891 (E.D. Wis. 2000)................................................................... 13

Chevron U.S.A. Inc. v. NRDC,
467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)..................................... 10, 11

Cordero v. Cia Mexicana de Aviacion, S.A.,
681 F.2d 669 (9th Cir. 1982) ................................................................................. 14

Gonzaga University v. Doe,
536 U.S. 273 (2002)................................................................................................ 13

Maine v. Thiboutot,
448 U.S. 1 (1980).................................................................................................... 13

Millard Refrigerated Services, Inc. v. FAA,
98 F.3d 1361 (D.C. Cir. 1996)............................................................................... 12

Nader v. Allegheny Airlines, Inc.,
512 F.2d 527 (D.C. Cir. 1975), rev'd on other grounds, 426 U.S. 290 (1976).............................. 14

Newman v. American Airlines, Inc.,
176 F.3d 1128 (9th Cir. 1999) ............................................................................... 14

Southwest Air Ambulance, Inc. v. City of Las Cruces,
268 F.3d 1162 (10th Cir. 2001) ............................................................................. 13

Tallarico v. Trans World Airways, Inc.,
881 F.2d 570 (8th Cir. 1989) ................................................................................. 14

Wilder v. Virginia Hospital Association,
496 U.S. 498 (1990)................................................................................................ 13

BOI_MT2:530451.1

**Statutes**

14 C.F.R. § 161.5 ................................................................................................................. 11

49 U.S.C. § 41705 .............................................................................................................. 14

49 U.S.C. § 47524 .................................................................................................. 4, 10, 12, 14

**Regulations**

56 Fed. Reg. 48,661 (1991) ................................................................................................ 12

Federal Aviation Regulation Part 161 ............................................................................. 1, 2, 7

BOI_MT2:530451.1

COME NOW Plaintiffs Ronald N. Tutor and Tutor-Saliba Corporation ("Tutor") by and through their undersigned counsel and respectfully submit this Memorandum of Law in support of their Motion for Summary Judgment filed concurrently herewith.

## INTRODUCTION

The Friedman Memorial Airport at Hailey, Idaho (the "Airport") is part of the national airspace system under the jurisdiction of the Federal Aviation Administration ("FAA"). Defendants own and operate the Airport.

Although it is owned and operated locally, the Airport receives funding for improvements and maintenance from the FAA. In return, the Airport Commission is required to comply with federal laws and regulations, including those laws and regulations which limit its right to implement access restrictions, and define the manner in which such restrictions may be imposed, and the procedures to be followed in obtaining approval for such restrictions. The Airport Commission is not at liberty to impose its own restrictions in a manner which is inconsistent with Federal law.

In this case, the Airport Commission has imposed an access restriction in violation of Federal law, in particular Part 161 of the Federal Aviation Regulations. Plaintiffs seek an injunction to prohibit the defendants from enforcing this unlawful restriction, and to prohibit them from interfering with the operation of plaintiffs' airplane at the Airport.

## STATEMENT OF FACTS

Concurrently with this Motion, plaintiffs are submitting their Statement of Undisputed Material Facts ("SUMF"). For the convenience of this Court, plaintiffs have summarized, in this section, some of the more pertinent facts in connection with this Motion.

The Hailey, Idaho airport (hereafter the "Airport") receives improvement funding from the Federal Aviation Administration and is subject to the requirements imposed by law as a condition of such funding.  As a result, the Airport Authority, which owns and operates the Airport, has an obligation to comply with certain Federal Statutes, including the Airport Noise and Capacity Act ("ANCA"), and the applicable Federal Aviation Regulations ("FARs"), including those promulgated under Part 161.  These statutes and regulations provide that certain conditions must be complied with before an access restriction can be imposed on an airport after October 1, 1990.

During the ski seasons of 1989-1990 and 1990-1991, the Airport Authority permitted the operation of Boeing 737 airplanes into and out of the Airport.  These airplanes have dual main landing gear wheels and a maximum certificated operating weight in excess of 95,000 pounds.  During the 1990-1991 ski season, the Airport Commission decided that the 737s would not be allowed to operate at the Airport during the following ski season.  However, the 737s were permitted to continue operations through the end of the current ski season, which ran to March/April, 1991.  Thereafter, the Airport imposed an *access* restriction, barring all dual main wheel airplanes with a maximum gross operating weight of more than 95,000 pounds.  In imposing this weight based access restriction, the Airport Authority made no attempt to comply with the provisions of ANCA or FAR Part 161.

The Airport Authority did, however, request permission from the FAA to impose a night time curfew at the airport for *noise abatement* purposes.  The FAA determined that the Airport Authority had not provided sufficient information to justify that curfew.  Subsequently, the Airport Authority terminated their efforts to impose a mandatory curfew and made provisions

for a voluntary curfew which is currently in effect. The FAA has consistently rejected access restrictions which do not comply with ANCA *or* which are *noise* restrictions disguised as operational limitations.

For many years Ronald Tutor, a principal of Tutor-Saliba Corporation, has owned real property in Ketchum, Idaho. During this time he has flown into the Airport several times per year in a private jet, primarily in the winter and occasionally in the summer. In 2000, Tutor-Saliba Corporation purchased, and in 2001 placed into service, a Boeing Business Jet, hereafter referred to as the BBJ. Plaintiff's BBJ is a Stage 3 aircraft, meaning, among other things, that its jet engines have been modified to run quieter than Stage 2 airplanes. The Airport Authority has refused to allow the BBJ to operate at the Airport based on the published weight bearing information of the pavement. It is this access restriction which is being challenged.

The Airport Facilities Directory published by the Federal Aviation Administration ("FAA") succinctly states, in the "Legend" on page 6: "Runway strength data shown in this publication is derived from available information and is a realistic estimate of capability at an average level of activity." This legend goes on to state that the published weight limitation is not intended as a maximum allowable weight or as an operating limitation, and specifically states that "many airports" pavements are capable of supporting limited operations with gross weights of 25-50% in excess of the published figures."

Since acquiring the BBJ, Mr. Carruthers, Chief Pilot at Tutor-Saliba Corporation, has requested and received permission to operate into four separate airports (Olympia, Washington, Nagadoches, Texas, Napa, California and Groton, Connecticut) which have

published weight limits less than the maximum operating weight of the BBJ. Hailey, Idaho has

denied permission for operation of the BBJ on the basis of weight.

## LEGAL ANALYSIS

Pursuant to FRCP Rule 56, a party is entitled to Summary Judgment if there are

no genuine issues of material fact and the moving party is entitled to judgment as a matter of

law.

As more fully set forth below, the defendants are subject to federal law in

connection with their operation of the Airport, and may not simply operate it as they see fit.

Since the Airport is part of the national airspace system, it must comply with the same rules

which govern the other airports. That means that the Airport Authority cannot impose access

restrictions in violation of Federal law. As more fully set forth below, defendants' attempt to

impose the access restriction at issue is unlawful and should be precluded by injunction.

A.   **Federal Statutes Preclude the Airport Authority from Imposing or Enforcing the Access Restriction at Issue in This Case.**

49 U.S.C. § 47524 is entitled Aircraft Noise and Access Restriction Review

Program. Subsection (c), pertaining to Stage 3 aircraft, states in pertinent part:

> (1)   Except as provided in subsection (d) of this section, an airport noise or access restriction on the operation of stage 3 aircraft not in effect on October 1, 1990, may become effective only if the restriction has been agreed to by the airport proprietor and all aircraft operators or has been submitted to and approved by the Secretary of Transportation after an airport or aircraft operator's request for approval as provided by the program established under this section. Restrictions to which this paragraph applies include:
>
>       . . .
>
> (E)   any other restriction on stage 3 aircraft.

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**FOR SUMMARY JUDGMENT - 4**

(2)     Not later than 180 days after the Secretary receives an airport or aircraft operator's request for approval of an airport noise or access restriction on the operation of a stage 3 aircraft, the Secretary shall approve or disapprove the restriction. The Secretary may approve the restriction only if the Secretary finds on the basis of substantial evidence that

(A)     The restriction is reasonable, nonarbitrary, and nondiscriminatory;

(B)     The restriction does not create an unreasonable burden on interstate or foreign commerce;

(C)     The restriction is not inconsistent with maintaining the safe and efficient use of the navigable airspace;

(D)     The restriction does not conflict with any law or regulation of the United States;

(E)     An adequate opportunity has been provided for public comment on the restriction; and

(F)     The restriction does not create an unreasonable burden on the national aviation system.

Hailey has not applied for a restriction, nor has the Secretary of Transportation provided one.

In this case, the access restriction at issue is the prohibition of operations at the Airport by airplanes having a maximum certificated operating weight in excess of 95,000 pounds. [SUMF, paragraph 5]. It is the policy of the Airport to disallow operations of airplanes with a maximum operating weight above 95,000 pounds, even if the airplane is to be operated at a weight less than 95,000 pounds. [SUMF, paragraph 18]. However, it is uncontroverted that subsequent to October 1, 1990, the Airport Authority allowed the operation of Boeing 737 airplanes at the Airport. The decision to bar these operations was made sometime during the period from December 1990 and March or April 1991. [SUMF, paragraph 6]. The Boeing 737 has a maximum gross operating weight in excess of 95,000 pounds.  [SUMF, paragraph 13] However, the Boeing 737 operations were allowed to continue through the end of the 1990-1991

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 5**

ski season, up to about March of 1991.  [SUMF, paragraph 6].  In this case, the Airport

Commission imposed the subject access restriction after October 1, 1990.  In doing so, they did

not follow the required procedures set forth in the statute.  In particular, there is no indication

that the Airport Commission ever contacted the FAA about this new access restriction, [SUMF,

paragraph 7] much less received approval for this access restriction.  Hence, there can be no

suggestion that the FAA ever made any of the required findings to justify the imposition of this

new access restriction, or that any opportunity was provided for public comment as required.

**B.      The Federal Aviation Regulations, Part 161, Also Preclude the Airport
          Authority from Unilaterally Imposing the Access Restriction at Issue.**

The Federal Aviation Regulations (FARs) promulgated by the Federal Aviation

Administration (FAA) are codified at Title 14, Code of Federal Regulations, and are hereafter

referred to as FARs.  FAR Part 161 is entitled "Notice and Approval of Airport Noise and

Access Restrictions."  As more fully set forth below, the Airport Authority did not comply with

any of the specified procedures for introducing or enforcing the access restriction at issue.

Instead, the Airport Authority simply imposed the access restriction unilaterally.  Accordingly,

they violated the provisions of the FARs codified at Part 161.  To remedy this situation, for

which there is no adequate legal remedy, plaintiffs request that an injunction be issued,

specifically precluding the Airport Authority from enforcing the access restriction at issue or

interfering with the operation of the BBJ at the Airport.

**Section 161.1** states in pertinent part:

This part . . . prescribes:

(a)      Notice requirements and procedures for airport operators
implementing Stage 3 aircraft noise and access restrictions pursuant to agreements
between airport operators and aircraft operators;

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT - 6**

(b)    Analysis and notice requirements for airport operators proposing Stage 2 aircraft noise and access restrictions;

(c)    <u>Notice, review, and approval requirements</u> for airport operators proposing Stage 3 aircraft noise <u>and access restrictions</u>; and

(d)    Procedures for Federal Aviation Administration reevaluation of agreements containing restrictions on Stage 3 aircraft operations and of aircraft noise and access restrictions affecting Stage 3 aircraft operations imposed by airport operators.

(Emphasis added.)

It is uncontroverted that the BBJ is a Stage 3 aircraft.  [SUMF, paragraph 12].  Hence, there can be no question that this section of FAR Part 161 applies to the Airport Commission in connection with the imposition of the access restriction at issue here–the prohibition of operations by any dual wheel airplane having a maximum certificated operating weight in excess of 95,000 pounds.  Accordingly, defendants' attempt to impose and enforce such a restriction is illegal.  Plaintiffs have no adequate remedy at law to preclude defendants from enforcing or attempting to enforce such a restriction.  Accordingly, plaintiffs request that an injunction be issued to preclude enforcement of this purported restriction and to prohibit defendants from interfering with plaintiffs' aircraft at the airport.

**Section 161.3** states in pertinent part:

(b)    <u>This part also applies</u> to airports enacting <u>amendments to</u> airport noise and <u>access restrictions in effect on October 1, 1990, but amended after that date, where the amendment reduces or limits aircraft operations</u> or affects aircraft safety.

(c)    The notice, review, and approval requirements set forth in this part apply to all airports imposing noise or access restrictions as defined in §§ 161.5 of this part.

(Emphasis added.)

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT - 7**

Defendants may argue that the 95,000 pound weight limit was in effect prior to October 1, 1990. However, it is uncontroverted that the Airport Commission allowed Boeing 737 operations until March or April 1991 and did not implement its ban until sometime *after* October 1, 1990. It is clear from the record that these operations were allowed to continue to the end of the ski season, even though the decision was made during the ski season to ban such operations for the following ski season. [SUMF, paragraph 6]

**Section 161.103(a)** states:

An airport operator may not <u>implement</u> a Stage 3 restriction pursuant to an agreement with all affected aircraft operators <u>unless there has been public notice and an opportunity for comment</u> as prescribed in this subpart.

(Emphasis added.)

In this case, there has been no public notice or opportunity for comment as prescribed. Defendants do not allege otherwise.

**Section 161.107(c)** states:

Each airport operator must notify the Federal Aviation Administration of the implementation of a restriction pursuant to an agreement and must include in the notice evidence of compliance with §§ 161.103 and a copy of the signed agreement.

(Emphasis added.)

In this case, the Airport Commission did not make any effort to notify the FAA of the proposed restriction or its plans to implement the same after the 1990-1991 ski season. It did not make any effort to comply with any of the requirements specifically set forth in this Section. It merely put the restriction into effect on its own.

**Section 161.301** states:

(a) This subpart applies to:

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT - 8**

(1)    An airport imposing a noise or access restriction on the operation of Stage 3 aircraft that first became effective after October 1, 1990.

(2)    An airport imposing an amendment to a Stage 3 restriction, if the amendment becomes effective after October 1, 1990, and reduces or limits Stage 3 aircraft operations (compared to the restriction that it amends) or affects aircraft safety.

(b)    This subpart does not apply to an airport imposing a Stage 3 restriction specifically exempted in §§ 161.7, or an agreement complying with subpart B of this part.

(c)    A Stage 3 restriction within the scope of this subpart may not become effective unless it has been submitted to and approved by the FAA. The FAA will review only those Stage 3 restrictions that are proposed by, or on behalf of, an entity empowered to implement the restriction.

(Emphasis added.)

This section makes it clear that a proposed access restriction must be approved by the FAA before it can become effective. It is plaintiffs' position that in the absence of such approval, the purported restriction is void and cannot be enforced. In view of the Airport Commission's threat to enforce this restriction and to have the pilot arrested [SUMF, paragraph 20], an injunction is required to prevent irreparable harm to plaintiff from any such attempt to enforce the purported restriction.

Section 161.303(a) states:

Each airport operator or aircraft operator (hereinafter referred to as applicant) proposing a Stage 3 restriction shall provide public notice and an opportunity for public comment, as prescribed in this subpart, before submitting the restriction to the FAA for review and approval.

Section 161.305 states in pertinent part:

Each applicant proposing a noise or access restriction on Stage 3 operations shall prepare and make available for public comment an analysis that supports, by substantial evidence, that the six statutory conditions for approval

have been met for each restriction and any alternatives submitted. The statutory conditions are set forth in 49 U.S.C. App. 2153(d)(2) and paragraph (c) of this section.

(Emphasis added.)

In this case, the Airport Authority has not even attempted to comply with these requests. Hence, the proposed access restriction is void as a matter of law.

**C.    Defendants' Access Restriction Is Subject to the Airport Noise and Capacity Act, Codified at 49 USC Section 47521 et seq. ("ANCA").**

Defendants may argue that the ANCA applies only to noise restrictions and not to access restrictions based on the weight of the aircraft. However, such an interpretation is unfounded, and is directly controverted by federal authority to the contrary.

**1.    Congress's intention to make ANCA applicable to access restrictions other than noise restrictions is clear, and "that is the end of the matter."**

"If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837, 842-43, 104 S. Ct. 2778, 2782, 81 L. Ed. 2d 694 (1984).

ANCA clearly and unambiguously applies to access restrictions other than noise restrictions: "Restrictions to which the paragraph applies include— . . . (E) any other restriction on stage 3 aircraft." 49 U.S.C. § 47524(c)(E) (emphasis added).

The result compelled by the rule reaffirmed by the Supreme Court in the Chevron case is that access restrictions on Stage 3 aircraft other than noise restrictions must comply with ANCA. It is undisputed that defendants' access restriction did not comply with ANCA.

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 10**

**2.    Even if ANCA's applicability to access restrictions other than noise restrictions were ambiguous, a court is required to defer to the agency's interpretation of the statute.**

The Supreme Court, in <u>Chevron U.S.A. Inc. v. NRDC</u>, 467 U.S. 837, 842-43, 104 S. Ct. 2778, 2782, 81 L. Ed. 2d 694 (1984), held that a court is to defer to an agency's construction of a statutory scheme it is charged with administering:

> If . . . the court determines Congress has not clearly addressed the precise question at issue, the court does not simply impose its own construction on the statute . . . . Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
>
> . . .
>
> We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretation.

467 U.S. at 843, 104 S. Ct. at 2782 (deferring to the EPA's definition of the statutory term "stationary sources").

**3.    The FAA's construction that the statutory language "any other access restriction" means any access restriction other than a noise restriction is a permissible construction and entitled to deference.**

The FAA, in its regulations implementing ANCA, in particular, in its definition of "noise or access restriction" in 14 C.F.R. § 161.5, has construed "any other access restriction" to mean access restrictions other than noise:

> Noise or access restrictions means restrictions . . . affecting access or noise that affect the operations of Stage 2 or Stage 3 aircraft; . . . a limit, direct or indirect, on the total number of Stage 2 or Stage 3 aircraft operations; . . . a restriction imposing limits on hours of operations; . . . and any other restriction on Stage 2 or Stage 3 aircraft.

The history of the FAA's promulgation of this regulation shows that the FAA has construed ANCA to apply to access restrictions other than noise:

The following questions were posed in the Notice No. 91-8 and relate to applicability and the definition of restrictions:

Is the proposed definition of "noise" and "access" restrictions too broad. . . . [?] Should an access restriction that is unrelated to noise be subject to the regulation [41 C.F.R. § 161.5.] . . . . [?]

. . .

Response: The definitions of "noise" and "access" restrictions and the applicability of the proposed rule [14 C.F.R. § 161.5.] were primarily based on language of the Act. . . . Clearly, the Act requires the review of both noise and access restrictions. . . . Again, the Act explicitly references both noise and access restrictions and the paragraph [14 C.F.R. § 161.5] provides an illustrative, but not exclusive, list of types of covered restrictions. The descriptive phrases "a limit, direct or indirect, on the total number of Stage 3 aircraft operations" and "any other limit of Stage 3 aircraft" are included in the illustrative list. The Act, therefore, contemplates a broad review of restrictions including those that have an indirect effect on airport noise.

56 Fed. Reg. 48,661, 48,663-64 (1991), 1991 WL 188387 (emphasis added).  *Cf.* Millard Refrigerated Services, Inc. v. FAA, 98 F.3d 1361 (D.C. Cir. 1996) (remanding for decision by the FAA the issue whether a weight-based restriction is subject to ANCA).

### 4.    Conclusion: ANCA applies to defendants' access restriction.

The answer, simply, is that "any other access restriction" means "any other access restriction."

### D.    Plaintiffs Have Standing To Obtain an Injunction To Preclude Enforcement of the Illegal Access Restriction.

Plaintiffs have a private right of action for an injunction either under ANCA, 49 U.S.C. § 47524, part of the Federal Aviation Act, or under ANCA through 42 U.S.C. § 1983.

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**FOR SUMMARY JUDGMENT - 12**

Wilder v. Virginia Hospital Association, 496 U.S. 498, 509 n.9 (1990) (Whether plaintiff has a right of action under § 1983 based on a former amendment to the Medicaid Act "is a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute. . . . Consistent with this view, we recognize an exception to the general rule that § 1983 provides a remedy for violation of federal statutory rights only when Congress has affirmatively withdrawn the remedy"); Gonzaga University v. Doe, 536 U.S. 273, 283-85 (2002) ("We have recognized that whether a statutory violation may be enforced through § 1983 is a different inquiry than that involved in determining whether a private right of action can be implied for a particular statute. . . . Plaintiffs suing under § 1983 do not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes. . . . Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983"); Maine v. Thiboutot, 448 U.S. 1 (1980); Cedarhurst Air Charter, Inc. v. Waukesha County, 110 F. Supp. 2d 891 (E.D. Wis. 2000) (Airport and Airway Improvement Act, 49 U.S.C. § 47107, through § 1983, provides a private right of action). Even if a private right of action cannot be implied in a federal statute, § 1983 may nevertheless provide a remedy based on it.    Southwest Air Ambulance, Inc. v. City of Las Cruces, 268 F.3d 1162, 1172-73 (10th Cir. 2001) ("The fact that a federal statute does not give rise to an implied right of action . . . does not mean that a statutory violation cannot be remedied through a §1983 action").

A private right of action, or a private right enforceable through section 1983, has been recognized under various parts of the Federal Aviation Act. For example, the ban on subjecting a person to any "unjust discrimination or unreasonable prejudice or disadvantage"

under former section 404(b) (formerly codified as 49 U.S.C. § 1374(b)): Nader v. Allegheny Airlines, Inc., 512 F.2d 527, 537 (D.C. Cir. 1975), *rev'd on other grounds*, 426 U.S. 290 (1976) (calling the existence of this private right of action "well settled"); Cordero v. Cia Mexicana de Aviacion, S.A., 681 F.2d 669, 671 n.1 (9th Cir. 1982) ("It is well settled that a private right of action exists under this section"); Archibald v. Pan Am World Airways, Inc., 460 F.2d 14, 15 (9th Cir. 1972) ("This section creates a private cause of action for unreasonable preferences and undue discrimination"). ANCA provides a comparable right to owners and operators of Stage 3 aircraft to be free of unreasonable, discriminatory, and arbitrary restrictions.   49 U.S.C. § 47524(c)(2)(A)-(F).

Other acts within the Federal Aviation Act create private rights of action.  For example, the Air Carriers Access Act, 49 U.S.C. § 41705 (ACAA): Newman v. American Airlines, Inc., 176 F.3d 1128 (9th Cir. 1999) (in remanding for determination of the merits, the Ninth Circuit impliedly recognized a private right of action under the ACAA); Tallarico v. Trans World Airways, Inc., 881 F.2d 570 (8th Cir. 1989); former 49 U.S.C. § 1371(n)(2):  Bratton v. Shiffrin, 635 F.2d 1228 (7th Cir. 1980); former 49 U.S.C. § 1110: Aircraft Owners & Pilots Association v. Port Authority of New York, 305 F. Supp. 93, 103-05 (E.D.N.Y. 1969) ("Such an airport complex as that operated by the Authority, to which the Government has made repeated grants is, as a matter of affirmative federal law, 'available for public use on fair and reasonable terms and without unjust discrimination.'  Any departure from that substantive statutory object would be illegal conduct remediable at the suit of a person suffering individual injury for it.").

In this case, plaintiffs seek an injunction to preclude enforcement of the access restriction at issue, namely the access restriction imposed after October 1, 1990, banning the

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT - 14**

operation of dual main wheel airplanes with a maximum certificated gross weight in excess of 95,000 pounds. Because of the plaintiffs' ownership of a BBJ that seeks access to this airport, plaintiffs have been affected by this restriction and have standing to challenge its enforcement.

**E.** **Defendants Have No Basis To Assume that the FAA Would Approve the Access Restriction at Issue, and the Restriction Would Likely Be Disapproved.**

During oral argument on defendants' motion for protective order to preclude airport testing, defendants' counsel suggested that defendants need merely show that the ordinance imposing the access restriction at the Airport is not arbitrary or capricious and is reasonable. In fact, that is *not* the standard which applies where, as here, it is federal law which must be complied with. As noted in the federal statutes and regulations cited above, the access restriction can be imposed and enforced *only* if very specific procedures are carried out and the FAA makes very specific findings after reviewing "substantial evidence" which must be submitted by the Airport Commission.

None of the specific notice and approval procedures were carried out in this case, and the defendants cannot rationally contend that they complied with Federal law in this respect. Moreover, there is no basis to presume, or even assume, that the FAA would approve the access restriction in this case. The FAA does not furnish a rubber stamp for every request to impose a restriction, especially where the applicant fails to make the required factual showing. In particular:

In 1990, defendants themselves commenced the application process to impose a night time curfew at the Airport. In response, the FAA stated that the Airport Commission had failed to make the required showing and objected to the proposed curfew [SUMF, paragraph

21]. More recently, in 2003, the FAA has refused to accept a proposed access restriction at the Santa Monica Airport. *See* Declaration of Jonathan S. Morse, Exhibit D.

Recent actions within the FAA demonstrate that weight based restrictions such as those imposed by the Airport Commission will not be approved absent a suitable showing, and absent some other means to accommodate the operations which are being precluded. For example, the FAA's proposed policy statement in this area (Declaration of Jonathan S. Morse, Exhibit E) provides several alternatives for accommodating airplanes with an operating weight in excess of the published maximum, other than an outright ban on such operations. Among the options suggested is a limitation on the number of operations of airplanes at such weights, on a first come first served basis.

In short, if the Airport Commission truly believes that it should impose an access restriction on all aircraft above a certain gross weight, it should be required to do what every other airport operator is required to do  follow the approved procedures set forth under federal law to obtain FAA approval for such restriction, and be prepared to modify its application to come up with a reasonable restriction. Unless and until it does so, it cannot be allowed to enforce an arbitrary restriction.

It should be noted that other airports which publish weight limits in the Airport Facilities Directory allow operations of aircraft with operating weights in excess of those operating limitations. *See* Declaration of Dan Carruthers, dated September 5, 2003, wherein he identified four other airports where the BBJ has operated, with the permission of the airport, although the published weight bearing capacity was less than the maximum operating weight of the BBJ.

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**FOR SUMMARY JUDGMENT - 16**                                          BOI_MT2:530451.1

## CONCLUSION

This case presents a classic example of a local government attempting to impose an access restriction on a federally funded airport, in violation of the established procedures for doing so. The law is clear that they cannot impose and enforce the access restriction to this airport in the manner in which they have done, and that their attempt to do so is in violation of federal law. Accordingly, it is requested that the Court enter summary judgment imposing an injunction to preclude them from doing so.

DATED this 25th day of November, 2003.          Respectfully submitted,

                                                BAILEY & PARTNERS

                                                MOFFATT, THOMAS, BARRETT, ROCK &
                                                    FIELDS, CHARTERED


                                                By _____
                                                   James L. Martin – Of the Firm
                                                   Attorneys for Plaintiffs Ronald N. Tutor
                                                   and Tutor-Saliba Corporation

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT - 17**                          BOI_MT2:530451.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of November, 2003, I caused a true and correct copy of the foregoing **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** to be served by the method indicated below, and addressed to the following:

Perry M. Rosen
W. Eric Pilsk
AKIN, GUMP, STRAUSS, HAUER & FELD, LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Fax: (202) 887-4288

(✓) U.S. Mail, Postage Prepaid
( ) Hand Delivered
( ) Overnight Mail
( ) Facsimile

Barry J. Luboviski
LUBOVISKI, WYGLE & FALLOWFIELD, P.A.
460 Sun Valley Road, #205
Post Office Box 1172
Ketchum, Idaho 83340
Fax: (208) 726-3750

(✓) U.S. Mail, Postage Prepaid
( ) Hand Delivered
( ) Overnight Mail
( ) Facsimile

Peter J. Kirsch
KAPLAN, KIRSCH & ROCKWELL, LLP
1675 Broadway, Suite 2300
Denver, Colorado 80202
Fax: (303) 825-7005

( ) U.S. Mail, Postage Prepaid
( ) Hand Delivered
( ) Overnight Mail
( ) Facsimile

James L. Martin