Perry M. Rosen, Bar No. 2779
W. Eric Pilsk
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 887-4000
(202) 887-4288 facsimile
prosen@akingump.com
epilsk@akingump.com

Peter J. Kirsch
Kaplan Kirsch & Rockwell LLP
1675 Broadway, Suite 2300
Denver, CO 80202
(303) 825-7000
(303) 825-7005 facsimile
pkirsch@kaplankirsch.com

Barry J. Luboviski, Bar No. 2015
Luboviski, Wygle & Fallowfield, P.A.
460 Sun Valley Road, # 205
Ketchum, ID 83340
(208) 726-8219

Attorneys for Defendants

Rec'd _____ U.S. Courts
_____ Filed _____

DEC 23 2003

Cameron S. Burke
Clerk, Idaho

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| RONALD N. TUTOR, et al., | ) | Case No. CIV 02-475-S-BLW |
| | ) | |
| Plaintiffs, | ) | DEFENDANTS' OPPOSITION TO |
| | ) | PLAINTIFFS' MOTION FOR SUMMARY |
| vs. | ) | JUDGMENT |
| | ) | |
| CITY OF HAILEY, IDAHO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

61

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

ARGUMENT ..............................................................................................................................2

    I.     THE AUTHORITY'S RUNWAY WEIGHT LIMITATION DOES NOT VIOLATE ANCA BECAUSE THE WEIGHT LIMITATION WAS ADOPTED BEFORE THE EFFECTIVE DATE OF ANCA AND IS EXPRESSLY "GRANDFATHERED"........................................................................3

    II.    RUNWAY WEIGHT LIMITATIONS ARE NOT "NOISE OR ACCESS RESTRICTIONS" AS DEFINED IN ANCA ..........................................................5

    III.   EVEN ASSUMING THE AUTHORITY'S RUNWAY WEIGHT LIMITATION VIOLATES ANCA, TUTOR HAS NO PRIVATE RIGHT TO ENFORCE ANCA, DIRECTLY OR THROUGH 42 U.S.C. § 1983 ................8

        A.    ANCA Does Not Create Personal Rights That May be Enforced by Private Action or 42 U.S.C. § 1983 .............................................................8

        B.    There Is No Evidence of Congressional Intent To Allow Private Enforcement of ANCA, Whether Through Private Right of Action or Through 42 U.S.C. § 1983 ....................................................................11

        C.    The Cases Cited by Tutor in Support of His Claimed Private Right of Action are Inapposite ..........................................................................14

CONCLUSION...........................................................................................................................16

## TABLE OF AUTHORITIES

### FEDERAL CASES

Aircraft Owners and Pilots Ass'n v. Port Auth., 305 F. Supp. 93 (E.D.N.Y. 1969)..........15

Airtouch Cellular v. City of El Cajon, 83 F. Supp. 2d 1158 (S.D. Cal. 2000) ....................8

Archibald v. Pan Am.World Airways, Inc., 460 F.2d 14 (9th Cir. 1972)...........................14

Blessing v. Freestone, 520 U.S. 329, 117 S. Ct. 1353 (1997) ...........................................12

Bratton v. Shiffrin, 635 F.2d 1228 (7th Cir. 1980)................................................................14

Cannon v. University of Chicago, 441 U.S. 677, 99 S. Ct. 1946 (1979)...........................13

Channel Star Excursions, Inc. v. Southern Pac. Transp. Co., 77 F.3d 1135 (9th
    Cir. 1996)...........................................................................................................................9

Chevron U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837, 104 S. Ct. 2778 (1984).....................6

Cordero v. Cia Mexicana de Aviacion, S.A., 681 F.2d 669 (9th Cir. 1982) .....................14

Freeman v. City of Santa Ana, 68 F.3d 1180 (9th Cir. 1995) ..............................................5

Gonzaga Univ. v. Doe, 536 U.S. 273, 122 S. Ct. 2268 (2002)................................. passim

Nader v. Allegheny Airlines, Inc., 512 F.2d 527 (D.C. Cir. 1975).................................... 14

New York Airlines, Inc. v. Dukes County, 623 F. Supp. 1435 (D. Mass. 1985) ...............13

Newman v. American Airlines, Inc., 176 F.3d 1128 (9th Cir. 1999) ................................15

Pennhurst State Sch. and Hosp. v. Halderman, 451 U.S. 1, 101 S. Ct. 1531 (1981)........12

Suter v. Artist M., 503 U.S. 347, 112 S. Ct. 1360 (1992)...................................................12

Tallarico v. Trans World Airlines, Inc., 881 F.2d 566 (8th Cir. 1989)..............................14

Touche Ross & Co. v. Redington, 442 U.S. 560, 99 S. Ct. 2479 (1979) ............................9

Wright v. The Fred Hutchinson Cancer Research Ctr., 269 F. Supp. 2d
    1286 (W.D. Wash. 2002) ...............................................................................................13

### STATUTES, REGULATIONS AND LEGISLATIVE MATERIALS

Airport Noise and Capacity Act of 1990,
    49 U.S.C. §§ 47521-47533 (2003)........................................................................ passim

42 U.S.C. § 1983................................................................................................... passim

49 U.S.C. § 47521...............................................................................................................12

49 U.S.C. § 47523...............................................................................................................12

49 U.S.C. § 47524(a) ...................................................................................................5, 7, 12

49 U.S.C. § 47524(c) ..........................................................................................................11

49 U.S.C. § 47524(c)(1)...................................................................................................11

49 U.S.C. § 47524(c)(2)...................................................................................................12

49 U.S.C. § 47524(e) .......................................................................................................11

49 U.S.C. § 47526............................................................................................................12

104 Stat. 1388-378 (1990) ...............................................................................................11

136 Cong. Rec. S13616-05, S13621 (Sept. 24, 1990) .....................................................11

14 C.F.R. § 161.3(a)...........................................................................................................3

## MISCELLANEOUS

Letter from Cynthia Rich, Associate Administrator for Airports, FAA, to J.
    Richard Studenny (Apr. 7, 1995)..............................................................................5, 6

Department of Transportation, Federal Aviation Administration, Order 5100.38B
    (May 31, 2002)................................................................................................................5

## INTRODUCTION

Since 1983 there has been a runway weight limitation at Friedman Memorial Airport ("Airport") that limits use of the runway to dual-wheel aircraft with a maximum gross takeoff weight of 95,000 pounds or less. The runway weight limitation is based on engineering analysis of the weight bearing capacity of the runway, and is intended to ensure the safety of Airport users and to minimize the need for repairs to the runway. The Friedman Memorial Airport Authority ("Authority") and its predecessors have consistently enforced that limitation, whether by denying permission for overweight operations or by stopping previously unauthorized overweight operations.

In 2001, Plaintiff Ronald N. Tutor and his company co-Plaintiff Tutor-Saliba Corp. (collectively referred to herein as "Tutor") sought permission to operate their Boeing Business Jet ("BBJ"), a dual-wheel aircraft with a maximum gross takeoff weight of 171,000 pounds, at the Airport. Applying its longstanding runway weight limitation, the Airport Authority denied that request. Tutor has challenged that decision, asserting eleven separate causes of action.

Tutor's Motion for Summary Judgment — on just one of Tutor's claims — exhibits the fallacy underlying all of his causes of action. Airport rules relating to the safe operations of the Airport apply to *all* Airport users. These rules are not amorphous, hortatory guidelines that can be tweaked or ignored to accommodate the personal desires of anyone owning an aircraft. The rules are and must be uniformly applied to all users regardless of their personal situation. In their Motion for Summary Judgment, Plaintiffs Tutor seeks to overturn the Authority's reasonable, and uniformly applied, runway weight limitation through a claim based on a statute that does not even support a private right of action.

Indeed, the very statute upon which Tutor relies —- the Airport Noise and Capacity Act of 1990, 49 U.S.C. §§ 47521-47533 (2003) ("ANCA") — like the entire statutory system of airport

regulation — is designed to ensure that Airport rules, regulations and limitations are rationally

based on legitimate concerns for the safe and efficient operation of the Airport. Beyond that,

ANCA and other aviation statutes are designed to protect against the very action sought by

Plaintiffs — to bend, reevaluate, alter or ignore Airport rules based on personal preferences of

specific aircraft operators. Tutor's entire case, and in particular the ANCA claim, suffers from

the fundamental flaw of attempting to elevate a claim of personal convenience into an absolute

legal right, and then seeking judicial sanction to require the Authority, all other Airport users and

the community to shoulder the public burden of that personal privilege.

Apart from that fundamental flaw, however, Tutor's Motion for Summary Judgment must

be denied for any one of four separate reasons:

1. ANCA only applies to noise or access restrictions adopted after October 1, 1990
   and the Authority's runway weight limitation was adopted in 1983.

2. A runway weight limitation is not a noise or access restriction within the meaning
   of ANCA.

3. ANCA does not permit a private right of action.

4. ANCA does not create individual rights enforceable through an action pursuant to
   42 U.S.C. § 1983.

Indeed, as detailed in Defendants' Motion for Summary Judgment, it is plain that summary

judgment should be entered in favor of Defendants.

## ARGUMENT

Tutor's argument in favor of Summary Judgment relies on three facts: (1) a limited

number of 737 aircraft with a maximum takeoff weight of over 95,000 pounds operated at the

Airport between 1989 and 1991; (2) the Authority voted to discontinue those operations in early

1991 without obtaining FAA approval; and, (3) the Authority applied its runway weight

limitation to Tutor's BBJ, which is a Stage 3 aircraft. Because ANCA prohibits the adoption of

noise or access restrictions on Stage 3 aircraft after October 1, 1990 without FAA approval, Tutor argues, the Authority's runway weight limitation must violate ANCA. This simplistic view of the case is insufficient to support Tutor's Motion for Summary Judgment for the simple reason that it omits other facts that demonstrate beyond dispute that the runway weight limitation was adopted *prior* to October 1, 1990 and is therefore not subject to ANCA's requirements. Furthermore, as a matter of law, ANCA does not apply to runway weight limitations. Finally, even if ANCA does apply, Tutor has no private right of action to enforce ANCA.

I.    **THE AUTHORITY'S RUNWAY WEIGHT LIMITATION DOES NOT VIOLATE ANCA BECAUSE THE WEIGHT LIMITATION WAS ADOPTED BEFORE THE EFFECTIVE DATE OF ANCA AND IS EXPRESSLY "GRANDFATHERED"**

In adopting ANCA, Congress expressly provided that ANCA's new procedures regarding adopting noise and access restrictions apply *only* to "noise and access restrictions not in effect on October 1, 1990." 49 U.S.C.A. § 47524(c)(1). The FAA included this "grandfather" provision in its regulations implementing ANCA.   14 C.F.R. § 161.3(a).   Accordingly, Tutor must demonstrate that the Authority's runway weight limit did not exist prior to October, 1990. In an attempt to make that showing, Tutor asserts that the Authority's 1991 decision to forbid further 737 operations by one charter operator represents a *new* restriction to exclude all aircraft with a gross takeoff weight of more than 95,000 pounds.

Tutor's argument is simply unsupported by the undisputed facts of the case, however. It is undisputed that the Authority's current runway weight limitation of 95,000 pounds for dual wheel aircraft has been in effect since 1983. Defendants' Statement of Undisputed Material Facts (Nov. 26, 2003) at ¶¶ 11 - 12. The 95,000-pound weight limitation was first reported to the FAA in 1983 and has been consistently reported in the Airport's Master Record and the Airport/Facility Directory, including specifically such records prior to October 1, 1990.

Commissioner Mix testified that she became aware of the weight limitation in "at least 1990." Affidavit of W. Eric Pilsk in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment ("Pilsk Aff."), Ex. 1, 36:8 – 36:17. Minutes of Authority meetings prior to 1990 demonstrate that the Authority used weight as a criteria to evaluate the propriety of proposed operations in the years prior to 1990. Pilsk Aff., Ex. 4 (Minutes of Meeting of the Blaine County Airport Commission, Aug. 2, 1988) (the Airport Manager reported that "a charter flight (737) Dash 300 [which would operate in ski season] would meet weight provisions and that it is a very quiet aircraft. . . ."). Moreover, the testimony of Authority Commissioner Mary Ann Mix, id. at Ex. 1, 88:1 – 92:7, and Airport Manager Richard Baird, id. at Ex. 2, 53:9 – 54:7, confirms that the Authority's runway weight limitation has been in place since prior to October 1, 1990. Indeed, Mr. Baird and Ms. Mix testified that the Commission was not aware of the fact that the 737s exceeded the runway weight limitation, and indeed would have presumed that the 737s complied with the weight limitation. Id. at Ex. 2, 54:8 – 56:19; Ex. 1, 37:13 – 38:6.

Tutor's argument that the runway weight limitation was not adopted until 1991, when the Commission voted to stop the only 737 operations then occurring, can be believed only believable if one ignores all of these facts. Indeed, one would have to ignore the language of the Commission's decision to stop those 737s, which clearly reflects an understanding that the Commission was enforcing pre-existing policy: "staff be directed to respond to Sportours informing them that the airport policy does not allow a 737 to land at Friedman and the airport does not intend to change its policy regarding 737's in the foreseeable future." Id. Baird Aff. ¶ 38, Ex. 22 at p. 4. At most, the 737 operations were the result of an inadvertent lapse in enforcement. But just as non-enforcement of a regulation is no excuse for the violation of a regulation, however, a single lapse in enforcement over a 20-year period — a lapse that was

corrected upon its detection — does not establish that the regulation was first established when it was enforced after an initial violation of the regulation. See Freeman v. City of Santa Ana, 68 F.3d 1180, 1188 (9th Cir. 1995) (fact that club owner was denied permit while other clubs received permits does not require issuance of the permit). Because Tutor's Motion relies on a selective, and therefore inaccurate, statement of the true, undisputed facts of the case, his Motion for Summary Judgment must be denied.

## II.   RUNWAY WEIGHT LIMITATIONS ARE NOT "NOISE OR ACCESS RESTRICTIONS" AS DEFINED IN ANCA

Even if the Court does not deny Tutor's Motion for Summary Judgment based on ANCA's grandfather provision, the Motion must still be denied because runway weight limitations are not noise or access restrictions as defined under ANCA and applicable regulations. Tutor argues that a runway weight limitation constitutes an access restriction, and is therefore subject to ANCA's restrictions on the adoption of "noise and access restrictions" because it limits access to the airfield. While this argument appears to have superficial appeal, it makes no sense in the context of the statute and has specifically been rejected by the FAA.

The FAA has memorialized its understanding of the scope of ANCA in an agency Order providing guidance to airports on how to comply with federal grant obligations: "The FAA does not consider such a [runway weight] limitation to be a noise restriction within the meaning of 49 U.S.C. 47524." Dep't of Transp., Federal Aviation Adm'n, Order 5100.38B at ¶ 520(b) (May 31, 2002). The FAA addressed the issue squarely in a dispute between Millard Refrigerated Services and the Omaha Airport Authority. Letter from Cynthia Rich, Associate Administrator for Airports, FAA, to J. Richard Studenny (Apr. 7, 1995) (Pilsk Aff., Ex. 3[1]). In that case, the airport

---

[1] The letter is also available on the FAA's web page, where letters interpreting ANCA are posted.

was faced with a choice between expanding and improving its runway and other facilities to accommodate larger and heavier aircraft or maintaining its existing facilities, and limiting operations to aircraft that could safely operate there. When the Omaha Airport Authority opted not to expand, Millard Refrigeration Services filed an administrative complaint with the FAA alleging, inter alia, that the city ordinance imposing a runway weight limitation of 12,500 pounds or less violated ANCA.

The FAA determined that the runway weight limitation was not a noise or access restriction within the meaning of ANCA because it "reflects the new service capability" of the airport. Id. at 2. Because the limitation was adopted for safety reasons and "was not imposed to control noise or limit access," the runway weight limitation was not a noise or access restriction under ANCA. Id. This is clearly a reasonable interpretation of the scope of ANCA, and should be accepted as a valid understanding of ANCA's application to runway weight limitations.

As the agency charged by Congress with interpretation and enforcement of ANCA, the FAA's interpretation of ANCA is entitled to considerable deference, and is presumptively correct, as Tutor agrees. Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment ("Tutor's Br.") at 11; Chevron U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837, 842-43, 104 S. Ct. 2778, 2782 (1984). This is not a case, as Tutor argues, in which Congress has expressed its intent so unambiguously that there is no room for agency interpretation. See Tutor's Br. at 10. ANCA is silent as to whether a rule based upon the physical capabilities of an airport, which applies to all aircraft regardless of noise level, is subject to ANCA. Certainly there is no language in ANCA which precludes agency discretion in finding that ANCA does not apply to regulations based on the physical capabilities of an airport.

Having been charged by Congress to establish "by regulation a national program for reviewing airport noise and access restrictions on the operation of stage 2 and stage 3 aircraft," 49 U.S.C. § 47524(a), the FAA has determined that runway weight limitations are not "noise and access restrictions" within the meaning of ANCA. This is clearly a reasonable interpretation of the scope of ANCA, and must be accepted as a valid understanding of ANCA's non-application to runway weight limitations.

The undisputed evidence here shows that the Airport's runway weight limitation is based on the Authority's reasonable assessment of the capabilities of the runway. Defendants' Statement of Undisputed Material Facts at ¶¶ 11-13, 34. In particular, the Authority has been advised by its engineer that the weight bearing capacity of the runway is no more than 95,000 pounds and that heavier aircraft were causing damage to the runway. Id. at ¶ 34. The runway weight limitation reflects the "service capabilities" of the runway, and does not constitute a noise and access restriction within the meaning of ANCA. Accordingly, as a matter of law, ANCA does not apply to the Authority's runway weight limitation, and Plaintiffs' Motion for Summary Judgment should be denied and judgment entered in favor of Defendants.

Tutor asserts that the FAA likely would not approve the runway weight limitation pursuant to ANCA. Tutor's Br. at 15-16. Tutor cites no evidence in support of that purely speculative assertion. More importantly, the argument is inapposite for the simple reason that it does not address whether ANCA applies to the Authority's *existing* runway limitation. Moreover, none of the examples of FAA action Tutor cites even relate to the FAA's treatment of runway weight restrictions under ANCA. For example, Tutor cites a recent FAA letter regarding new restrictions adopted by the City of Santa Monica in 2002 based on aircraft size and approach speed under the Airport Reference Codes. The FAA letter to which Tutor cites makes no

reference to, and does not discuss, runway weight limitations or whether such limitations are subject to ANCA. Accordingly, the FAA's opinions regarding the Santa Monica case do not support Tutor's arguments in this case.

Similarly, Tutor refers to a *proposed, draft* FAA policy regarding weight limitations and compliance with FAA grant terms. Tutor's Br. at 16. As a mere proposal, this draft policy does not represent the agency's final view on the issue. More importantly, the proposed policy does not discuss or refer to ANCA, nor does it purport to make any statement as to whether a runway weight limitation constitutes a noise or access restriction within the meaning of ANCA. Finally, Tutor asserts that other airports allow aircraft operations above the posted runway weight limitation. Tutor's Br. at 16. Of course, actions by other airports relating to their runways are completely irrelevant to whether it remains appropriate for the Friedman Memorial Airport Authority to continue to enforce a runway weight limitation that has been in effect since 1983.

## III.    EVEN ASSUMING THE AUTHORITY'S RUNWAY WEIGHT LIMITATION VIOLATES ANCA, TUTOR HAS NO PRIVATE RIGHT TO ENFORCE ANCA, DIRECTLY OR THROUGH 42 U.S.C. § 1983

An additional fundamental reason exists to deny Tutor's Motion for Summary Judgment (and to grant summary judgment for Defendants): Tutor has no private right of action to enforce ANCA and may not enforce a violation of ANCA indirectly through 42 U.S.C. § 1983.[2]

### A.    ANCA Does Not Create Personal Rights That May be Enforced by Private Action or 42 U.S.C. § 1983

Tutor's claim that he has a private right of action to enforce ANCA, whether through an implied direct right of action or through Section 1983, is based solely on his assertion that he is

---

[2]  Of course, if the Court finds that the Authority's runway weight limitation is not subject to ANCA, for either of the reasons explained above, the Court need not reach the issue of whether Tutor has a private right of action. See Airtouch Cellular v. City of El Cajon, 83 F. Supp. 2d 1158 (S.D. Cal. 2000) (no remedy under 42 U.S.C. § 1983 unless there has been a deprivation of a federal right).

"affected" by the Authority's runway weight limitation. Tutor's Br. at 15. He attempts to support that claim by citing a number of cases addressing rights of action under other statutes, and indeed statutes with decisively different language and purposes than ANCA, in an effort to argue that a private right of enforcement impliedly exists under ANCA. Tutor's arguments miss the decisive issue in any claimed right of private action, whether it be direct implied action or a Section 1983 action: Did Congress intend to create a right that could be enforced through private action?

"The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." Touche Ross & Co. v. Redington, 442 U.S. 560, 575, 99 S. Ct. 2479 (1979). See also Channel Star Excursions, Inc. v. Southern Pac. Transp. Co., 77 F.3d 1135, 1136-37 (9th Cir. 1996) ("'ultimate issue is whether Congress intended to create a private right of action.'") (quoting California v. Sierra Club, 451 U.S. 287, 293, 101 S. Ct. 1775 (1981)). Similarly, in order to have a remedy under Section 1983, Tutor must establish that ANCA contains "explicit rights-creating terms." Gonzaga Univ. v. Doe, 536 U.S. 273, 283-4, 122 S. Ct. 2268, 2275-76 (2002). "For a statute to create such private rights, its text must be 'phrased in terms of the persons benefited.'" Id. (quoting Cannon v. University of Chicago, 441 U.S. 677, 692 n.13, 99 S. Ct. 1946 (1979)). Critically, 42 U.S.C. § 1983 "provides a remedy only for the deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States. Accordingly, it is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of that section." Id. at 283, 122 S. Ct. at 2275 (quoting 42 U.S.C. § 1983; emphasis in original). Under this analysis, "statutes that focus on the person regulated rather than the individuals protected *create 'no implication of an intent to confer rights on a particular class of persons.'*" Id. at 287, 122 S. Ct. at 2277 (citing Alexander v. Sandoval,

532 U.S. 275, 289, 121 S. Ct. 1151 (2001) (internal citations omitted; emphasis added)). In other words, even if Tutor could establish that ANCA applies to runway weight limitations, and even if Tutor could establish that the Authority's runway weight limitation was not in effect before October, 1990, Tutor would have no private right of enforcement unless Congress unambiguously created private rights for aircraft operators under ANCA.

Indeed, the Supreme Court has made it clear that the questions of whether a private right of action exists or whether a statute creates a private right enforceable through Section 1983 are answered by focusing on Congressional intent: "Accordingly, where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." Gonzaga, 536 U.S. at 286, 122 S. Ct. at 2277. This inquiry "should therefore not differ from [the inquiry] in discerning whether personal rights exist in the implied right of action context." Id. at 285, 122 S. Ct. at 2276.

Tutor provides no analysis of ANCA's language, structure or legislative intent that even purports to establish any Congressional intent to provide a private remedy or any enforceable rights. Indeed, Tutor appears confused by the statutory structure, asserting that ANCA is "part of the Federal Aviation Act." Tutor's Br. at 12. In fact ANCA is not part of, and was not adopted to be integral to, the Federal Aviation Act. See 104 Stat. 1388-378 (1990) (no indication that ANCA is an amendment to the Federal Aviation Act). In fact, an analysis of the language, structure and legislative history of ANCA demonstrates the complete absence of Congressional intent to create any individually enforceable rights.

B.   There Is No Evidence of Congressional Intent To Allow Private
     Enforcement of ANCA, Whether Through Private Right of Action or
     Through 42 U.S.C. § 1983

In 49 U.S.C. § 47524(c), Congress imposed restrictions on the ability of airport proprietors to impose noise or access restrictions on Stage 3 aircraft. The statute is phrased as a limitation on conduct by airport proprietors. It is not "phrased in terms of" aircraft operators, and indeed confers no particular rights or privileges on aircraft operators to stop proposed noise and access restrictions. By its plain terms, then, ANCA contains no "rights creating language" in favor of aircraft operators. Moreover, there is no suggestion or implication of a private enforcement remedy. See also Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment at pp. 39 - 45. To the contrary, Congress provided for the enforcement of ANCA exclusively by the FAA, not private individuals, by requiring FAA review and approval of noise or access restrictions, 49 U.S.C. § 47524(c), and by requiring the FAA to withhold grant and other approvals if the FAA has not approved a noise or access restriction otherwise subject to ANCA, id. at § 47524(c). There is no evidence that Congress intended to create any private remedies for alleged violations of ANCA outside the administrative enforcement scheme mandated by ANCA.

Indeed, the legislative history of ANCA shows that Congress considered, and expressly rejected, allowing for private enforcement of ANCA. As introduced on September 24, 1990, Section 304 of the bill (S3094) that eventually became ANCA, in a section entitled "Private Right of Action", stated, "An aircraft operator may commence a civil action against an airport proprietor for the purpose of protecting its rights under this Act, in any United States District Court without regard to citizenship or amount in controversy." 136 Cong. Rec. S13616-05, S13621 (Sept. 24, 1990). Congress removed this section from the final version of S3094, and it

was not included in what was enacted as ANCA. Thus, Congress has expressly rejected the notion that there is or should be a private remedy for the enforcement of ANCA.

The absence of any personal right of an aircraft operator is reinforced by the overall structure of ANCA. In its findings, set forth in Section 47521, Congress announced its policy goal of balancing national and local interests with respect to aircraft noise, without any reference to private aircraft operators (there is a reference to commercial air carriers). Accordingly, Congress mandated the creation of a "national aviation noise policy." 49 U.S.C. § 47523. As part of that national policy, Congress mandated that the FAA create a "national program for reviewing airport noise and access restrictions on the operation of stage 2 and stage 3 aircraft." Id. at § 47524(a). In reviewing such restrictions, Congress required that the FAA balance several factors to ensure that the broad public interest was served. Id. at § 47524(c)(2). Conspicuously absent from that list is any particularized consideration of the impact on individual aircraft operators. Finally, the penalty for not complying with Section 47524 is the loss of eligibility for federal grant funds and the ability to impose passenger facility fees. Id. at 47526.

It is clear that the language and structure of ANCA do not create the kinds of individual rights in aircraft operators enforceable through a private action. The purpose and structure of ANCA show that Congress intended to impose certain duties on airport proprietors as a condition of receiving federal funding in order to ensure a balanced approach to the imposition of noise and access restrictions. 49 U.S.C. § 47526. Conditions placed on federal funding are generally insufficient to create individual rights enforceable through Section 1983. Pennhurst State Sch. and Hosp. v. Halderman, 451 U.S. 1, 101 S. Ct. 1531 (1981); Suter v. Artist M., 503 U.S. 347, 112 S Ct. 1360 (1992); Blessing v. Freestone, 520 U.S. 329, 117 S. Ct. 1353 (1997). At most, ANCA is intended to ensure a balanced approach to the imposition of noise or access restrictions

by requiring that the FAA balance several factors to ensure that any particular noise or access restriction benefits the public as whole, and not just any particular segment of the public. "[T]he Court has been especially reluctant to imply causes of actions under statutes that create duties on the part of persons for the benefit of the public at large." Cannon v. University of Chicago, 441 U.S. 677, 692 n.13, 99 S. Ct. 1946 (1979) (citations omitted).

In application, ANCA merely allocates responsibility for noise or access restrictions between the federal and local levels of government without creating individual rights. See New York Airlines, Inc. v. Dukes County, 623 F. Supp. 1435, 1449 (D. Mass. 1985) (finding no private right of action when "[t]he principal concern of [the statute] is the allocation of authority between the federal and state governments, not the establishment of individual rights"). See also Wright v. The Fred Hutchinson Cancer Research Ctr., 269 F. Supp. 2d 1286, 1289-90 (W.D. Wash. 2002) (finding no Section 1983 remedy or private right of action for enforcement of federal regulations that imposed duties on certain medical facilities). Clearly, the language, structure and legislative history of ANCA, particularly when analyzed in light of the Supreme Court's decision in Gonzaga, supports the conclusion that ANCA does not create rights that are enforceable through Section 1983 or any implied private right of action.

Finally, Tutor's claim that he is "affected" by the Authority's runway weight restriction, is insufficient to overcome this weight of authority. As the Court made clear in Gonzaga, the fact that one is "affected," or even particularly benefited, by a statute is insufficient for it to create the kind of personal rights enforceable through Section 1983. "[I]t is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced" through Section 1983. Gonzaga, 536 U.S. at 283, 122 S. Ct. at 2275. Indeed, the Court in Gonzaga expressly rejected any reading of its earlier cases that would find a right enforceable under Section 1983 "so long as the plaintiff falls

within the general zone of interest that the statute is intended to protect. . . ." Id. at 282-83. The fact that Tutor may be "affected" by the runway weight limitation is wholly insufficient to establish that he may enforce ANCA through Section 1983 or an implied right of action.

      C.    The Cases Cited by Tutor in Support of His Claimed Private Right of Action are Inapposite

Rather than analyzing ANCA, Tutor merely offers a string-cite to cases addressing other statutes to argue that a private right of action exists under ANCA. Because the existence of a private right of action turns on a careful analysis of Congressional intent in enacting that particular statute, judicial determinations regarding private rights of action under other statutes are irrelevant. In any event, nothing in those cases would support a finding of an implied private right of action under ANCA. To the contrary, these cases exhibit the critical element that is missing from ANCA — a statute expressly designed to protect identified rights of specific categories of airport users. For example, several cases cited by Tutor address private rights of action to enforce a prohibition on discriminatory practices against individuals by airlines set forth in a now-repealed enactment formerly codified at 49 U.S.C. § 1374(b). Nader v. Allegheny Airlines, Inc., 512 F.2d 527, 537 (D.C. Cir. 1975), rev'd on other grounds, 426 U.S. 290 (1976); Archibald v. Pan Am. World Airways, Inc. 460 F.2d 14, 15 (9th Cir. 1972); Cordero v. Cia Mexicana de Aviacion, S.A., 681 F.2d 669, 671 (9th Cir. 1982) (recognizing in dicta a private right of action for passengers who are "bumped" or are the victims of racial discrimination).

The other cases cited by Tutor are equally inapposite. Bratton v. Shiffrin, 635 F.2d 1228 (7th Cir. 1980) (finding private right of action to enforce section of Federal Aviation Act relating to private remedies against insolvent charter operators for refund of air fare); Tallarico v. Trans World Airlines, Inc., 881 F.2d 566 (8th Cir. 1989) (finding private right of action to enforce Air Carrier Access Act, 49 U.S.C. § 41705, which requires air carriers to make aircraft accessible to

handicapped persons); <u>Newman v. American Airlines, Inc.</u>, 176 F.3d 1128 (9th Cir. 1999) (discussing Air Carrier Access Act, but no explicit recognition of private right of action); <u>Aircraft Owners and Pilots Ass'n v. Port Auth.</u>, 305 F. Supp. 93, 103 (E.D.N.Y. 1969) (discussing standing under Public Airport Development Act and Federal Aviation Act to mount preemption challenge to "take-off" fee; case decided under pre-<u>Cort v. Ash</u> law).

Tutor's argument reduces to the proposition that any violation of a federal law will support a Section 1983 action. Tutor's Br. at 13. This notion was expressly rejected by the Court in <u>Gonzaga</u>. First, as discussed above, the Court in <u>Gonzaga</u> expressly held that a statute is only enforceable through Section 1983 if it unambiguously creates individual rights. "We now reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983." <u>Gonzaga</u>, 536 U.S. at 283, 122 S. Ct. at 2275. Because the Court in <u>Gonzaga</u> deliberately narrowed its earlier cases that might have been understood to support another rule, Tutor's citation to three cases decided before <u>Gonzaga</u> is unavailing. See Tutor's Br. at 13.

Second, Tutor carefully uses ellipses to find three sentences spread across three pages of the Court's decision in <u>Gonzaga</u> that, when strung together, appear to support Tutor's simplistic interpretation of <u>Gonzaga</u>. For example, Tutor quotes the Court as stating: "We have recognized that whether a statutory violation may be enforced through § 1983 'is a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute.'" <u>Gonzaga</u>, 536 U.S. at 283, 122 S. Ct. at 2275. Tutor uses ellipses to omit the very next sentence: "But the inquiries overlap in one meaningful respect — in either case we must first determine whether Congress *intended to create a federal right*." <u>Id.</u> (emphasis in original). The Court went on to cite, quote and discuss implied right of action cases to define when statutes

create rights that are enforceable by individual plaintiffs, whether through an implied right of action or through Section 1983.

Accordingly, Tutor's legal arguments do not establish that he has a private right of action to enforce ANCA, whether directly through an implied private right of action or indirectly through Section 1983. To the contrary, analysis of the language, structure and legislative history of ANCA establish that there is no implied private right of action and no personal "right" enforceable through Section 1983.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment should be denied.

Respectfully submitted,

_____

Perry M. Rosen, Bar No. 2779
W. Eric Pilsk
Akin Gump Strauss Hauer & Feld, LLP
1333 New Hampshire Ave., N.W.
Washington, D.C. 20036
(202) 887-4000
(202) 887-4288 facsimile

Barry J. Luboviski, Bar No. 2015
Luboviski, Wygle & Fallowfield, P.A.
460 Sun Valley Rd # 205,
Ketchum, ID 83340
(208) 726-8219

Peter J. Kirsch
Kirsch Kaplan & Rockwell LLP
1675 Broadway, Suite 2300
Denver, CO 80202
(303) 825-7000
(303) 825-7005 facsimile

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by this overnight delivery this

19th day of December, 2003 to the following:

James Martin
Moffatt, Thomas, Barrett, Rock
 & Fields, Chartered
101 S. Capitol Boulevard, 10th Fl.
Post Office box 829
Boise, ID 83701

Patrick E. Bailey
Jonathan Morse
Bailey & Partners
2828 Donald Douglas Loop North
Second Floor
Santa Monica, CA 90405-2959

W. Eric Pilsk