ORIGINAL

James L. Martin, ISB No. 4226
MOFFATT, THOMAS, BARRETT, ROCK &
    FIELDS, CHARTERED
101 S. Capitol Blvd., 10th Floor
Post Office Box 829
Boise, Idaho 83701
Telephone (208) 345-2000
Facsimile (208) 385-5384
jlm@moffatt.com
19-460

Patrick E. Bailey (SBN 86875)
Carolyn J. Shields (SBN 169911)
BAILEY & PARTNERS
2828 Donald Douglas Loop North
Second Floor
Santa Monica, California 90405-2959
Telephone: (310) 392-5000
Facsimile: (310) 392-8091

Attorneys for Plaintiffs Ronald N. Tutor
and Tutor-Saliba Corporation

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RONALD N. TUTOR; an Individual; and TUTOR-SALIBA CORPORATION, a California Corporation,<br><br>    Plaintiffs,<br><br>vs.<br><br>CITY OF HAILEY, IDAHO, a Municipal Corporation; BOARD OF TRUSTEES OF THE FRIEDMAN MEMORIAL AIRPORT AUTHORITY; and FRIEDMAN MEMORIAL AIRPORT AUTHORITY,<br><br>    Defendants. | Civil No. 02-475-S-BLW<br><br>**PLAINTIFFS' LEGAL BRIEF IN REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

Plaintiffs Ronald N. Tutor and Tutor-Saliba Corporation ("Tutor") hereby provide this legal brief in reply to defendants' opposition to Tutor's motion for summary judgment.

**PLAINTIFFS' LEGAL BRIEF IN REPLY TO DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 1**  BOI_MT2:534342.2



## I. INTRODUCTION

This case involves the defendants' attempt to impose and enforce an access restriction at the Friedman Memorial Airport in Hailey, Idaho (the "Airport"), in violation of the United States Constitution and the laws of the United States and Idaho. In short, defendants have attempted to take the law into their own hands.

Tutor seeks summary judgment to obtain an injunction to prohibit defendants from enforcing or attempting to enforce the purported access restriction (the "Access Restriction") precluding operations of dual main wheel airplanes with certificated maximum operating weight in excess of 95,000 pounds, after allowing such operations prior to and after October 1, 1990. The Access Restriction was enacted and is being enforced in violation of the United States Constitution, the Idaho State Constitution, the Aircraft Noise and Capacity Act ("ANCA"), and the enabling Federal Aviation Regulations, FAR Part 161. Indeed, as more fully set forth below, there is no such access restriction, and defendants are attempting to enforce a restriction which does not exist.

Defendants do not allege that there was even an attempt to comply with ANCA or FAR Part 161. Rather, defendants allege that the Access Restriction preceded October 1, 1990; that ANCA does not apply to the Access Restriction; and that even if defendants violated ANCA, Tutor has no standing to seek redress for that violation. As set forth in Tutor's motion, and as amplified in this reply, none of these arguments has any merit.

The true fact is that defendants have never adopted any access restriction based on weight and are attempting to enforce a restriction which has never been enacted. If the Court agrees, then the Court need not even address the defenses raised by the defendants.

## II. LEGAL ANALYSIS

**A. Plaintiffs Are Entitled to Summary Judgment Because Defendants Have Failed to Make a Showing That There Was Any Weight-Based Restriction Prior to October 1, 1990. The Records Provided by Defendants Show That There Was No Such Restriction, and There is None Today.**

In opposing a motion for summary judgment, the nonmoving party must present competent, admissible evidence to create a genuine issue of fact. F.R.C.P. Rule 56. In the absence of such evidence, and where, as in the present case, defendants have failed to make a showing sufficient to establish the existence of an element essential to that party's defense, and on which that party will bear the burden of proof at trial, the motion should be granted. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Defendants claim that there was a weight-based restriction at the Airport which predated October 1, 1990, the cutoff date allowed by ANCA and FAR Part 161 for preexisting access restrictions to be enforced without FAA approval. As explained infra, ANCA and FAR Part 161 impose specific requirements which must be followed before any access restrictions may be imposed on a Stage 3 airplane, unless that restriction was in place prior to October 1, 1990. In addition, a restriction adopted by the Airport in the form of a decision, resolution, or ordinance is required by Idaho statutes § 31-709 to be kept in writing. In this case, defendants have not provided any evidence of any rule, any regulation, or any ordinance imposing or attempting to impose such a restriction. In fact, there is not now nor has there ever been any rule, any regulation, or any ordinance of the type described. In short, there is no evidence of any such restriction prior to January 1991, because there was no such restriction.

Plaintiffs do not have to prove the nonexistence of a pre-October 1990 weight-based restriction. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986) ("we find no

express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials <u>negating</u> the opponent's claim," emphasis in original). Rather, "[i]n certain situations, a party's (normally plaintiff's) burden of persuasion on an issue . . . may be shifted to the party who is in a better position to provide the necessary information." FEDERAL CIVIL TRIALS AND EVIDENCE 8:4821, 4835; GTS Industries, S.A. v. S/S HAVTJELD, 68 F.3d 1531, 1535-36 (2d Cir. 1995) (burden of proving due diligence to make a vessel seaworthy is on the vessel owner because of its superior knowledge of what diligence it used compared to the shipper who has none). Because defendants would have the burden of proving the existence of a pre-October 1990 weight-based restriction at trial, and because defendants, as nonmoving parties, have failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986), the moving parties are entitled to summary judgment, <u>Id.</u>

While defendants have <u>alleged</u> that the 95,000 pound weight limitation has been in place since 1983 [Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion, hereinafter DMPA, page 3], the evidence offered by defendants is not competent or admissible to support this allegation. Rather, <u>the evidence from defendants' own files directly refutes defendants' allegations</u>. In particular:

- Defendants <u>allege</u> that since 1983, the 95,000 pound dual wheel limit has consistently been reported to the FAA, reported in the Master Airport Record maintained by the FAA for the Airport, and published in standard industry manuals, <u>such as the federal government's Airport/Facilities Directory,</u> [Defendants' Statement of Undisputed Material Fact, hereinafter DSUMF,

paragraph 11] and that since 1983, the FAA has approved Airport Layout Plans setting forth the 95,000 pound runway weight limitation for dual wheel aircraft without comment or objection. [DSUMF, paragraph 13.] Even if these statements were true, which they certainly are not, this does not suggest, much less establish, that there was a weight limitation on the use of the airport, or that the FAA considered there to be a restriction or limitation based on weight. To the contrary, the FAA Airport/Facilities Directory directly states that "<u>the published information is not to be considered as a weight limitation</u>." [Plaintiffs' Statement of Additional Material Facts, hereinafter PSAMF, paragraph 81.] In addition, there has never been any rule, regulation or ordinance promulgated by the Airport Authority even to attempt to give legal effect to such a purported restriction. [PSAMF, paragraph 70.]

- Defendants offer the deposition testimony of Airport Commissioner Mary Ann Mix and Airport Manager Richard Baird for the proposition that "the Authority's runway weight limitation has been in place since prior to October 1, 1990." [DMPA, page 4.] However, the testimony does not support this allegation and is objected to as irrelevant. Ms. Mix testified that she became aware of this "restriction" in "at least 1990" (Pilsk Affidavit, Ex. 1, 36:8 - 16:17) and that it was "in effect in 1991" (Pilsk Affidavit, Ex. 1, 88:1 - 92:7), not prior to October 1, 1990. Mr. Baird's testimony (Pilsk Affidavit, Ex. 2, 53:9 - 54:7) relates to the period December 1990 to the end of the ski season in 1991, not prior to October 1, 1990. Mr. Baird was not employed by the Airport until after October 1, 1990, and he does not claim to have personal knowledge of what took

place at the Board prior to that time. Accordingly, since Ms. Mix and Mr. Baird do not claim to have personal knowledge on these points as of October 1, 1990, their testimony is inadmissible to prove the truth of what they wish to be true. FED. R. EVID. 602. In the absence of a published rule, there is no competent evidence.

- Defendants also offer the testimony of Ms. Mix and Mr. Baird for the proposition that the Commission was not aware that the 737s being operated in 1989-1991 exceeded the runway weight limitation. [DMPA, page 4.] Mr. Baird does not claim to have personal knowledge of what the commissioners knew or assumed, except to the extent he was reviewing the minutes of their meetings. While Ms. Mix may claim that <u>she</u> did not know about the weight of the 737s, this does not establish or purport to establish that the <u>other commissioners</u> were unaware of it. Indeed, the minutes of the December 4, 1990, meeting clearly show that there was an unequivocal disclosure that larger aircraft had been landing at the Airport and that the Airport Manager urged that the Commission consider higher landing fees for aircraft over the designated limit. [PSAMF, paragraph 59.] In response, the Commission directed Airport staff to determine the overweight aircraft currently landing at the Airport, and to send letters informing of the weight limit and of the fact that "steps <u>will be taken</u> to restrict the landing of overweight aircraft." (Emphasis added.) [PSAMF, paragraph 60.] This document provides <u>prima facie evidence</u> that there was no such restriction in place as of December 1990.

- The evidence offered by defendants and discussed in the preceding paragraph also is objected to as irrelevant. (a) The testimony of Mr. Baird (Pilsk Affidavit, Ex. 2, 54:8 - 56:19) relates to the period December 1990 to the end of the ski season in 1991, testimony irrelevant to whether there was a restriction prior to October 1, 1990. (b) Ms. Mix testified (Pilsk Affidavit, Ex. 1, 37:13 - 38:6) that it was during the master planning in 1991 that she read that the weight limitation "would be" 95,000 pounds, testimony irrelevant to whether there was a restriction prior to October 1, 1990.

- The testimony of Ms. Mix (that she "knew," "learned[ed]," had an "understanding," and had a "recollection" of a restriction); the testimony of Mr. Baird, (that he "believe[d]" and had an understanding that there was such a restriction), supra; and the reference of a Mr. Drake to "weight provisions" at the Airport (Pilsk Affidavit, Ex. 4), are also objected to as inadmissible hearsay. FED. R. EVID. 803(3) (the "statement of . . . belief to prove the fact . . . believed" is inadmissible hearsay); United States v. Cohen, 631 F.2d 1223, 1225 (5th Cir. 1980) (Fed. R. Evid. 803(3) "expressly excludes from the operation of the [state of mind exception to the hearsay] rule a statement of belief to prove the fact believed"); Shepard v. United States, 290 U.S. 96, 54 S. Ct. 22, 78 L. Ed. 196 (1933); United States v. Sayakhom, 186 F.3d 928, 937 (9th Cir. 1999) (statement of witness's belief (that she did not violate the law) was inadmissible to prove the truth of the fact believed).

In short, the only competent evidence of what the Airport Commissioners knew and when they knew it is in the minutes of the Airport Commission meetings, and this evidence

**PLAINTIFFS' LEGAL BRIEF IN REPLY TO DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 7**       BOI_MT2:534342.2

is not negated by the testimony of Ms. Mix or Mr. Baird, or by any evidence offered by defendants. These minutes clearly show that the Airport Commission knew, in December 1990, that airplanes over 95,000 pounds were using the airport, and that it was not until January 1991 that the Commission attempted to ban these aircraft. [PSAMF, paragraph 62.] Even then, there was no attempt to promulgate any rule, regulation or ordinance to impose this restriction, there was no public notice or request for comments concerning this proposed restriction, and there has never been such a restriction. By contrast, the Airport Commission did provide a draft Regulation to the FAA for a proposed night time curfew, solicited FAA approval, and also solicited and received public comments concerning that proposed regulation. [PSAMF, paragraphs 56-58.] Notably, the FAA declined to approve this proposed curfew, stating that the Airport had not provided sufficient information or justification. [PSAMF, paragraph 57.] This history of being rebuffed by the FAA perhaps explains why the Airport did not seek FAA approval before attempting to impose a 95,000-pound weight limit in January 1991.

**B.     Plaintiffs Are Entitled to an Injunction to Preclude Enforcement of a Non-Existent Access Restriction Which Has Been Implemented and Enforced in an Unconstitutional Manner.**

Under the Due Process Clause of the Constitution of the United States, Tutor is entitled to notice and an opportunity to be heard before being subjected to an access restriction at the Airport, which may be enforced through an injunction. Parker v. Lester, 227 F.2d 708, 723 (9th Cir. 1955). ("The regulations as enforced and carried out by the Coast Guard operated to deny the plaintiffs due process of law and in consequence they are entitled to an injunction against the further enforcement of these regulations.") See also other cases cited in Plaintiffs' Legal Brief in Opposition to Defendants' Motion for Summary Judgment, pages 23-25.

In violation of Tutor's right to **Procedural Due Process**, defendants are enforcing an access restriction without having provided notice or an opportunity to be heard. [PSAMF, paragraph 70.] Under the Federal Constitution, ANCA and FAR Part 161, Tutor had a right to notice and an opportunity to be heard <u>before</u> any weight-based restriction could be imposed. "A fundamental requirement of due process is 'the opportunity to be heard.' . . . It is an opportunity which must be granted at a meaningful time and in a meaningful manner." <u>Armstrong v. Manzo</u>, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191, 14 L. Ed. 2d 62 (1965). Defendants cannot be allowed to take the law into their own hands, and an injunction is both necessary and appropriate to prevent this from occurring.

In addition, the enforcement of the purported Access Restriction violates Tutor's right to **Substantive Due Process**.

Defendants concede, as they must, that Tutor's BBJ has been denied access to the Airport on the basis of its weight. [Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment, page 12]. However, defendants have not and cannot cite any evidence of the existence of any weight-based access restriction. To the contrary, the Access Restriction which was intended to ban heavy aircraft, adopted during the January 1991 Airport Commission meeting, was a restriction based on the <u>approach speed and wing span</u> of the airplanes, which bears no rational relationship to the weight of the aircraft. [PSAMF, paragraphs 63, 64.]

Prior to the adoption of that purported Access Restriction,[1] there was a direct disclosure to the Airport Commission, both orally and in writing, that airplanes over 95,000

---

[1] While defendants claim to have reclassified the Airport from C-III to B-III, albeit without seeking or requesting FAA approval, defendants' own documents indicate that the

**PLAINTIFFS' LEGAL BRIEF IN REPLY TO DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 9**           BOI_MT2:534342.2

pounds were using the airport, and that steps <u>would be taken</u> to restrict such operations. [PSAMF, paragraphs 59, 60.]

Where, as here, defendants have deprived Tutor of both procedural and substantive due process, there is a compelling need for an injunction to prevent the defendants from enforcing a secret rule, in violation of both federal and state law.

### C. ANCA and FAR Part 161 Apply to the Access Restriction.

Tutor disagrees with defendants' contention that ANCA and FAR Part 161 do not apply to weight-based restrictions. Such a contention is directly contrary to the plain words of ANCA and Part 161. As set forth in 49 U.S.C. § 47524(c)(E): "Restrictions to which the paragraph applies include— . . . (E) *any other restriction on stage 3 aircraft*." (Emphasis added.) The BBJ is a Stage 3 airplane. Defendants' Response to Plaintiffs' Statement of Undisputed Material Facts, paragraph 12.

The legislative history and agency interpretation of ANCA, in the context of the FAA's adoption of the regulations which implement ANCA, clearly support Tutor's position. In that legislative history, the FAA directly responded to a question asking whether ANCA and Part 161 apply to non-noise access restrictions and stated that they clearly do:

> <u>Clearly, the Act requires the review of both noise and access restrictions</u>. . . . Again, <u>the Act explicitly references both noise and access restrictions</u> and the paragraph [14 C.F.R. § 161.5] provides an illustrative, but not exclusive, list of types of covered restrictions. The descriptive phrases "a limit, direct or indirect, on

---

Airport Classification is, in fact, C-III. The current Friedman Memorial Airport Master Plan document, located on the airport's web site, contradicts defendants' assertion that the Airport is presently in the B-III classification. On page 6 it is stated: ". . . Due to current and projected aircraft activity, the FAA Airport Reference Code (ARC) at the Airport is now C-III rather than B-III. . . ." A copy of this document is attached to the Declaration of Jonathan S. Morse, dated January 8, 2004.

> the total number of Stage 3 aircraft operations" and "any other limit of Stage 3 aircraft" are included in the illustrative list. The Act, therefore, contemplates a broad review of restrictions including those that have an indirect effect on airport noise.

56 Fed. Reg. 48,661, 48, 663-64 (1991), 1991 WL 188387 (emphasis added).

Defendants offer a quotation from FAA Order 5100.38B, and represent that it shows the contrary. (Opposition, page 5.) It does not. That Order states only that the FAA does not consider such a limitation to be a <u>noise</u> restriction within the meaning of 49 U.S.C. 47524. There is no suggestion that such a limitation would not be an "<u>access</u>" restriction. Even if the wording of the FAA Order did support defendants' position on this issue, which it does not, it would be unavailing to overcome the express words of ANCA and FAR Part 161. Moreover, it does not diminish the direct agency interpretation quoted in the previous paragraph: (1) FAA Order 5100.38B has the status of "guidance," and its policies relate to "the Airport Improvement Program" authorized by the Airport and Airway Improvement Act, 49 U.S.C. § 47102. FAA Order 5100.38B, § 1, 1. (2) The quoted statement does not state that a weight-based restriction is not an access restriction, or that it is not subject to ANCA, or that ANCA does not apply to non-noise restrictions; rather, it states that a limitation on aircraft operations is not a <u>noise</u> restriction. (3) The quoted statement does not state that a limitation on aircraft operations does not have to be submitted to the FAA for approval.

In any event, the FAA has no power to adopt an interpretation contrary to clear statutory language provided by Congress: "If the intent of Congress is clear, that is the end of the matter; for the court, <u>as well as the agency</u>, must give effect to the unambiguously expressed intent of Congress." <u>Chevron U.S.A. Inc. v. NRDC</u>, 467 U.S. 837, 842-43, 104 S. Ct. 2778, 2782, 81 L. Ed. 2d 694 (1984) (emphasis added). ANCA refers to "a restriction on noise

levels", 49 U.S.C. §47524 (c)(A), a restriction on the number of stage 3 operations, id., § 47524(c)(B), a restriction on hours of operations, id., § 47524(c)(D), and "any other restriction on stage 3 aircraft," id., § 47524(c)(E) (emphasis added). Because a noise restriction would fall within the first of these, the last of these plainly and unambiguously contemplates restrictions other than noise restrictions. The agency interpretation quoted in the first paragraph of this section recognizes this plain and unambiguous language. The FAA's own proposed weight-based policy, included with plaintiffs' opening papers [Declaration of Jonathan S. Morse, dated November 2003, Exhibit E], presumes that an airport will seek FAA approval of any weight-based restriction; otherwise, there would be no need for an FAA weight-based policy.

Defendants also attempt to support their reading of ANCA with the FAA's letter to counsel for Millard Refrigerated Services, Inc. (Pilsk Dec., Ex. 3). This letter predates the opinion of the D.C. Court of Appeals in Millard Refrigerated Services, Inc. v. FAA, 98 F.3d 1361 (D.C. Cir. 1996), which remanded for determination by the FAA the issue whether a weight-based restriction is subject to ANCA. The FAA took the position in 1996, in that case, that it had not decided this issue and that Millard had not raised it. Id. Thus, it appears that the FAA considered that the 1995 Letter attached as Exhibit 3 to Mr. Pilsk's declaration did not determine this issue.

As shown in the Court of Appeals' opinion, however, the Omaha Airport Authority had submitted the proposed weight-based restriction to the FAA for approval – exactly what Friedman Memorial Airport did not do in this case and which Tutor claims it should have done. A restriction subject to ANCA requires FAA approval: "For a restriction on State III aircraft, [ANCA] provides that the restriction must be approved by the FAA." H.R. Rep. No. 503, 102d Cong., 2d Sess., 1992, at *23, 1992 WL 90629; In the Matter of Compliance with

Federal Obligations By the Naples Airport Authority, Naples, Florida, 2003 WL 22257716 (F.A.A.) *10 n.19, 25-26 (2003).

### D. Tutor Has Standing to Obtain an Injunction to Preclude the Violation of Tutor's Constitutional Rights.

Defendants contend that even if the Access Restriction was imposed in violation of ANCA and FAR Part 161, Tutor has no standing to challenge the provisions. It is Tutor's position that because of the constitutional issues involved, Tutor has standing to challenge the access restriction whether or not ANCA applies. One district court considered the merits of an argument based on ANCA and Part 161 without suggesting that the plaintiff lacked standing to make that argument. NBAA v. City of Naples Airport Authority, 162 F. Supp. 2d 1343, 1351-52 (M.D. Fla. 2001).

Tutor has already responded at length to this argument by the defendants in Tutor's opening brief and in Tutor's response to defendants' Motion for Summary Judgment, and incorporates by reference its position as set forth therein. [Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment (CR46); Plaintiffs' Legal Brief in Opposition to Defendants' Motion for Summary Judgment (CR69).] However, for the convenience of the Court, and without intending to be exhaustive, Tutor has set forth in this reply a brief synopsis of its position vis-a-vis the standing issue.

By express statutory and regulatory language (ANCA and FAR Part 161), Tutor has a federal right to notice and an opportunity to be heard. 49 U.S.C. § 47524(c)(2)(E); 14 C.F.R. §§ 161.303(a), 161.305. Even without such language, the Constitution provides Tutor with rights which may be enforced by means of an injunction. Parker v. Lester, 227 F.2d 708, 723 (9th Cir. 1955). See also other cases cited in Plaintiffs' Memorandum of Law in Support of

Motion for Summary Judgment (CR46), pages 12-15; Plaintiffs' Legal Brief in Opposition to Defendants' Motion for Summary Judgment (CR69), pages 23-25.

Defendants allege that 42 U.S.C. Section 1983 provides a remedy only for the deprivation of rights privileges or immunities secured by the Constitution and laws of the United States (Defendants' Opposition, page 9) and that there is no basis for a private right of action where there is no indication that Congress intends to create new individual rights. (Defendants' Opposition, page 10.) However, these arguments miss the mark. Plaintiffs have cited cases in which federal rights have been found for purposes of section 1983 where statutes create a right to notice and an opportunity to be heard, as ANCA does. The fact is that whether or not ANCA or Part 161 prohibit the imposition of the Access Restriction, the Access Restriction has been imposed in violation of the Constitution of the United States since, among other things, there was no notice or opportunity to be heard. Indeed, the Access Restriction was imposed in an impermissible manner, such action by a governmental entity is unconstitutional, and is subject to redress by means of an injunction.

### III. CONCLUSION

Defendants cannot justify their attempt to thwart justice by decrying "safety." Congress and the FAA have long recognized that municipalities across the country could and have, under the banner of "safety," attempted to restrict aviation by unlawful means. Accordingly, Congress and the FAA have made it very clear that <u>both</u> notice <u>and</u> an opportunity to be heard, together with meaningful review by the FAA, <u>must</u> precede the implementation of an access restriction.

At this juncture there is no need to debate whether defendants' experts are correct, nor to determine how the FAA might respond to an application for a weight-based restriction.

What is now before the Court is the issue of whether defendants can be permitted to operate in derogation of basic tenets of constitutional, statutory and regulatory law.

The United States Constitution requires that any government (federal, state or local) provide notice and an opportunity to be heard before enacting any law to restrict the actions of others. This is a fundamental right, and exists whether or not it is codified in Federal or State statutes and regulations. Where, as here, a government attempts to impose its will on citizens without providing for such notice and opportunity to be heard, and without even enacting into law the prohibition to be enforced, an injunction is necessary and appropriate to preclude such behavior.

Notwithstanding the constitutional violations involved in defendants' attempt to impose the access restriction, ANCA and FAR Part 161 make it very clear that an airport cannot impose an access restriction after October 1, 1990, without first obtaining FAA approval for same, which will be granted only if the FAA makes the required specific findings on the basis of substantial evidence. In this case, defendants did not even notify the FAA of its intent to impose the January 1991 access restriction, nor seek approval for doing so. Instead, defendants took the law into their own hands and imposed the subject access restriction without even attempting to get FAA approval.

In short, defendants' actions in imposing and enforcing the access restriction violate Tutor's constitutional rights, and contravene applicable Federal and State law. Tutor has no adequate remedy at law, and requests an injunction to preclude such conduct, together with an

award of attorney fees to redress Tutor's constitutional deprivation.

DATED this 9th day of January, 2004.

BAILEY & PARTNERS

MOFFATT, THOMAS, BARRETT, ROCK & FIELDS, CHARTERED

By _____
James L. Martin – Of the Firm
Attorneys for Plaintiffs Ronald N. Tutor
and Tutor-Saliba Corporation

**PLAINTIFFS' LEGAL BRIEF IN REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 16**

BOI_MT2:534342.2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of January, 2004, I caused a true and correct copy of the foregoing **PLAINTIFFS' LEGAL BRIEF IN REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** to be served by the method indicated below, and addressed to the following:

Perry M. Rosen
W. Eric Pilsk
AKIN, GUMP, STRAUSS, HAUER & FELD, LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Fax: (202) 887-4288

(√) U.S. Mail, Postage Prepaid
( ) Hand Delivered
( ) Overnight Mail
(√) Facsimile

Barry J. Luboviski
LUBOVISKI, WYGLE & FALLOWFIELD, P.A.
460 Sun Valley Road, #205
Post Office Box 1172
Ketchum, Idaho 83340
Fax: (208) 726-3750

(√) U.S. Mail, Postage Prepaid
( ) Hand Delivered
( ) Overnight Mail
(√) Facsimile

Peter J. Kirsch
KAPLAN, KIRSCH & ROCKWELL, LLP
1675 Broadway, Suite 2300
Denver, Colorado 80202
Fax: (303) 825-7005

(√) U.S. Mail, Postage Prepaid
( ) Hand Delivered
( ) Overnight Mail
( ) Facsimile

_/s/ James L. Martin_
James L. Martin