Perry M. Rosen, Bar No. 2779
W. Eric Pilsk
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 887-4000
(202) 887-4288 facsimile
prosen@akingump.com
epilsk@akingump.com

Peter J. Kirsch
Kaplan Kirsch & Rockwell LLP
1675 Broadway, Suite 2300
Denver, CO 80202
(303) 825-7000
(303) 825-7005 facsimile
pkirsch@kaplankirsch.com

Barry J. Luboviski, Bar No. 2015
Luboviski, Wygle & Fallowfield, P.A.
460 Sun Valley Road, # 205
Ketchum, ID 83340
(208) 726-8219

Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| RONALD N. TUTOR, et al., | ) | Case No. CIV O2-475-S-BLW |
| | ) | |
| Plaintiffs, | ) | |
| | ) | REPLY BRIEF OF DEFENDANTS |
| vs. | ) | IN SUPPORT OF DEFENDANTS' |
| | ) | MOTION FOR SUMMARY JUDGMENT |
| CITY OF HAILEY, IDAHO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... i

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................ 3

I. TUTOR'S STATEMENTS OF SUPPOSEDLY DISPUTED FACTS ARE
NEITHER MATERIAL NOR DO THEY MEET TUTOR'S BURDEN OF
ESTABLISHING A GENUINE DISPUTE SUFFICIENT TO AVOID
SUMMARY JUDGMENT ................................................................................... 3

II. COUNTS VI & VII: DEFENDANTS ARE ENTITLED TO SUMMARY
JUDGMENT ON TUTOR'S ANCA CLAIM ....................................................... 5

  A. ANCA Does Not Apply to Runway Weight Limitations ......................... 5

  B. Even if ANCA Were to Apply to Runway Weight Limitations, the
Weight Limit at Friedman Airport is Exempt From ANCA Because It
Was Established Prior to October 1, 1990 ............................................... 6

  C. Tutor Has No Private Right of Action to Enforce Any Alleged Violation
of ANCA .............................................................................................. 10

III. TUTOR'S CLAIM THAT THE RUNWAY WEIGHT RESTRICTION IS
ULTRA VIRES UNDER STATE LAW IS WITHOUT MERIT .......................... 11

  A. Tutor's State Law Claim is Time-Barred ............................................. 11

  B. The Authority's Decision to Deny Tutor Permission to Operate His BBJ
at the Airport Was in Conformance With Idaho Law ........................... 13

IV. COUNT III: THE WEIGHT LIMITATION DOES NOT VIOLATE THE
EQUAL PROTECTION CLAUSES OF THE UNITED STATES OR IDAHO
CONSTITUTIONS ........................................................................................... 15

V. COUNTS I & II: THE RUNWAY WEIGHT LIMIT DOES NOT DEPRIVE
TUTOR OF SUBSTANTIVE OR PROCEDURAL DUE PROCESS ................... 17

  A. Tutor's Desire to Fly the Personal Aircraft of His Choice Into the Precise
Airport Of His Choice is Not a Property Interest Protected by the Due
Process Clause .................................................................................... 17

  B. Tutor Has Provided No Facts Or Legal Authority That Could Support His
Substantive Due Process Claim ........................................................... 18

  C. Tutor Received All of the Proceeds to Which He Was Entitled ............. 19

VI. TUTOR IS NOT ENTITLED TO A JURY TRIAL ........................................... 20

CONCLUSION ........................................................................................................ 21

# TABLE OF AUTHORITIES

## FEDERAL CASES

Airtouch Cellular v. City of El Cajon, 83 F. Supp. 2d 1158 (S.D. Cal. 2000) ..............................17

Alaska Airlines, Inc. v. City of Long Beach, 951 F.2d 977 (9th Cir. 1992)...........................20, 21

Armstrong v. Manzo, 380 U.S. 545, 85 S. Ct. 1187 (1965) .........................................................20

Brooks v. Cook, 938 F.2d 1048 (9th Cir. 1991) ..........................................................................21

Cannon v. University of Chicago, 441 U.S. 677, 99 S. Ct. 1946 (1979).......................................11

Cedars-Sinai Medical Ctr. v. Shalala, 177 F.3d 1126 (9th Cir. 1999).............................................8

Chevron U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837, 104 S. Ct. 2778 (1984)...................................6

City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 719-20, 119 S.
    Ct. 1624 (1999)........................................................................................................................21

Clouser v. Espy, 42 F.3d 1522 (9th Cir. 1994)............................................................................17

Gonzaga Univ. v. Doe, 536 U.S. 273, 122 S. Ct. 2268 (2002)......................................................10

Hallstrom v. City of Garden City, 991 F.2d 1473 (9th Cir. 1993)..................................................12

Kearney v. Town of Wareham, 316 F.3d 18 (1st Cir. 2002) ..........................................................4

Krentz v. Robertson, 228 F.3d 897 (8th Cir. 2000) .....................................................................20

LaTrieste Rest. and Cabaret Inc. v. Village of Port Chester, 40 F.3d 587 (2d Cir. 1994)...............9

Leary v. Daeschner, 228 F.3d 729 (6th Cir. 2000) ......................................................................20

Mesnick v. Gen. Elec. Co., *950 F.2d 816 (1st Cir. 1991)* ..........................................................4, 5

New Port Largo, Inc. v. Monroe County, 95 F.3d 1084 (11th Cir. 1996).......................................3

Petrelli v. City of Mount Vernon, 9 F.3d 250 (2d Cir. 1993).........................................................9

Sproles v. Binford, 286 U.S. 374, 52 S. Ct. 581 (1932) ..............................................................18

Watkins v. United States Army, 875 F.2d 699 (9th Cir. 1989) .......................................................9

Wedges/Ledges of California, Inc. v. City of Phoenix, 24 F.3d 56 (9th Cir. 1994).......................18

## STATE CASES

Chambers v. Kootenai County Bd. of Comm'rs, 867 P.2d 989 (Idaho 1994) ................................14

Farrell v. Board of Comm'rs, 138 Idaho 378, 64 P.2d 304, (2002) ........................................12, 13

Osborn v. Salinas, 958 P.2d 1142, 131 Idaho 456 (1998) ..............................................................12

Sims v. Milwaukee Land Co., 20 Idaho 513, 119 P. 37 (1911).......................................................13

State v. Clark, 88 Idaho 365, 399 P.2d 955 (1965).........................................................................13

## STATUTES

42 U.S.C. § 1983.................................................................................................1, 3, 10, 11, 12

49 U.S.C. § 47524............................................................................................................................6

Idaho Code § 5-224................................................................................................................12, 19

Idaho Code § 21-401 ......................................................................................................................13

Idaho Code § 31-710(4) ..................................................................................................................13

Idaho Code § 50-321.......................................................................................................................13

Idaho Code § 67-2347.....................................................................................................................19

Idaho Code § 67-2347(4) ..........................................................................................................12, 13

## MISCELLANEOUS

Department of Transportation, Federal Aviation Administration, Order 5100.38B (May
    31, 2002) ..............................................................................................................................6

## INTRODUCTION

In his Complaint, Plaintiff Ronald Tutor and his company co-Plaintiff Tutor-Saliba Corp. (collectively referred to herein as "Tutor") assert that Defendant Friedman Memorial Airport Authority ("Authority") violated a myriad of alleged Constitutional and statutory rights when it denied Tutor permission to operate his personal Boeing Business Jet ("BBJ") at Friedman Memorial Airport ("Airport"). The 171,000-pound BBJ was denied permission to operate at the Airport because it exceeded the 95,000 pound runway weight limitation. Following the close of discovery, the Authority filed a Motion for Summary Judgment seeking the dismissal of all Tutor's claims.[1]

In his opposition to the Authority's Motion, Tutor has effectively abandoned his Fourth, Fifth and Seventh Causes of Action outright (Right to Travel, Commerce Clause and Airport and Airway Improvement Act) and, in addition, offers only a nominal defense of his Substantive Due Process claim (First Cause of Action). With respect to his state law claim (Ninth Cause of Action), Tutor proffers for the first time in opposition to summary judgment a meritless theory not plead in his Complaint and not disclosed in response to interrogatories. Based on the basic tenets of summary judgment — which require some argument and evidence that there exists a basis for a given cause of action and otherwise prohibits a party from raising new legal theories on the eve of trial (the new state law claim), these claims *must* be dismissed.

Although Tutor's Second, Third and Sixth Causes of Action (Equal Protection, Procedural Due Process, and Airport Noise and Capacity Act of 1990 ("ANCA")), as well as his claims for legal fees under 42 U.S.C. § 1983 (Eighth Cause of Action) and injunctive and declaratory relief (Tenth and Eleventh Causes of Action) technically remain for decision, the

---

[1]   Tutor also filed a Motion for Summary Judgment on his Airport Noise and Capacity Act of 1990 claim.

undisputed material facts of the case require entry of summary judgment in favor of Defendants. Although Tutor has shown considerable creativity in attempting to create factual confusion out of the record in this case, the barest scrutiny of Tutor's alleged "facts" reveals that Tutor has failed to raise any genuine dispute as to any *material* fact. As demonstrated in the Authority's Motion for Summary Judgment, Tutor's technical attack on the validity of the runway weight limitation is immaterial because nothing in Tutor's expert report demonstrates that the existing runway weight limitation is unreasonable or arbitrary. Implicitly recognizing that point, Tutor hardly raises that issue in opposition to the Authority's Motion for Summary Judgment.

Instead, Tutor's case now rests almost entirely on his ANCA claim. Because ANCA only applies to "noise and access restrictions" that were not in effect on October 1, 1990, Tutor argues that selected Authority actions and inaction between 1986 and 1991 somehow prove that the runway weight limitation was not adopted until 1991, or maybe never. Not only does Tutor rely on only selected facts in making this assertion, ignoring undisputed actions by the Authority and the FAA proving that the weight limitation was in effect long before October 1, 1990, Tutor's argument is based on a false premise: that non-enforcement of a rule or regulation voids the regulation until such time as it is officially repromulgated. Even more importantly, Tutor's ANCA claim must fail because ANCA does not apply to runway weight limits *and* even where ANCA does apply to an airport noise and access restriction, it may not be enforced by a private right of action.

Regardless of Tutor's attempt to create factual issues, his remaining claims assert nothing more than that the Authority, a governmental entity, violated some Constitutional or statutory requirement. Whether the Authority did violate the U.S. Constitution or a state or federal statute

2

is uniquely a question of law, suitable for summary judgment. See New Port Largo, Inc. v. Monroe County, 95 F.3d 1084, 1091 (11th Cir. 1996).

Finally, to the extent any of Tutor's claims survive summary judgment, his request for a jury trial must be stricken. Tutor no longer seeks compensatory damages pursuant to 42 U.S.C.§ 1983 (Eighth Cause of Action). In fact, Tutor admits he cannot establish any damages and, indeed, affirmatively asserts that there is no adequate remedy at law to redress his claimed injuries. This admission alone resolves any question about whether this case is ripe for summary judgment and, at the very least, establishes beyond doubt that Tutor has no basis for a jury trial.

## ARGUMENT

**I. TUTOR'S STATEMENTS OF SUPPOSEDLY DISPUTED FACTS ARE NEITHER MATERIAL NOR DO THEY MEET TUTOR'S BURDEN OF ESTABLISHING A GENUINE DISPUTE SUFFICIENT TO AVOID SUMMARY JUDGMENT**

Understandably, Tutor attempts to show that there is disagreement regarding certain facts, hoping that such supposed disputes will bar entry of summary judgment. In particular, Tutor relies almost exclusively on events in 1991 that are supposed to undermine the validity of both the Authority's original action in the 1980s establishing the runway weight limitation as well as its reanalysis of that limitation in 2002 in response to Tutor's request that he be allowed to operate notwithstanding the weight restriction. Although the Authority vigorously disputes Tutor's contentions, these so-called disputes are irrelevant, because none goes to material issues or otherwise preclude the Court from ruling on what are admittedly pure issues of law. As the First Circuit has explained:

> Of course, not every documented factual dispute will avert the swing of the summary judgment axe. To achieve that end, the dispute must relate to a material fact. In this context, "material" means that a fact has the potential of affecting the outcome of the case. And as to issues on which the nonmoving party bears the

burden of proof, "he must present definite, competent evidence to rebut the motion."

Kearney v. Town of Wareham, 316 F.3d 18, 22 (1st Cir. 2002) (quoting United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992)). As detailed below, Tutor's factual contentions regarding operations between 1986 and 1991 and the manner in which the Authority adopted its runway weight restriction are not only immaterial, they are red herrings specifically designed to confuse the Court into concluding that material factual disputes exist.

For example, Tutor spends much of his brief erecting a straw man. He argues that the Authority *never* adopted a weight limitation, but instead adopted a limitation based on Aircraft Design Category classifications. That argument not only ignores substantial and undisputed evidence that the Authority and the FAA had adopted a weight limitation, it is immaterial because the Authority's decision regarding the BBJ was based *solely* on weight. Indeed, the Authority has never used airport design classifications to prohibit *any* aircraft from operating at the Airport, including the BBJ.

Not only does Tutor introduce spurious assertions that are irrelevant to the decision to deny access to his overweight aircraft, but he does not even present evidence to support the facts he asserts to support his arguments. Tutor, as the party bearing the burden of proof, must present hard evidence that could support a favorable decision by a factfinder in order to create a genuine issue of material fact:

> Creating a genuine issue of material fact requires hard proof rather than spongy rhetoric. See *Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)* (explaining that "genuine issues of material fact are not the stuff of an opposing party's dreams"). Thus, though the party opposing a summary judgment motion enjoys a favorable presumption for the evidence he adduces, that evidence must be such that a reasonable factfinder could resolve the point in favor of the nonmoving party.

Id. As detailed below, even if Tutor has raised issues of material fact, he has failed to carry his burden of proving that there is a genuine issue regarding those facts.

## II.   COUNTS VI & VII: DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON TUTOR'S ANCA CLAIM

In opposition to the Authority's Motion for Summary Judgment on Tutor's ANCA claim, Tutor repeats, in a slightly rearranged format, his arguments in support of his Motion for Summary Judgment. The Authority already has responded to those arguments in detail in its Opposition to Plaintiffs' Motion for Summary Judgment (filed December 22, 2003). Rather than restate those points here, the Authority incorporates its opposition by reference, and concentrates in this Reply on the central points Tutor raises in opposition to the Authority's Motion for Summary Judgment.

### A.   ANCA Does Not Apply to Runway Weight Limitations

Tutor argues that ANCA applies to runway weight limitations because runway weight limitations restrict access to airfields and must therefore be "noise or access restrictions" within the meaning of ANCA. Tutor's argument, while linguistically facile, ignores the true meaning of a runway weight limitation, as well as Congress' intent in enacting ANCA.

The fundamental flaw with his argument is that it equates decisions by airport operators to restrict aircraft operations in order to control noise or to achieve other policy objectives with limitations created by virtue of the inherent, physical capabilities of an airport's facilities. A runway weight limitation is not an access restriction; it is a statement of the physical capabilities of the runway in the same way that the length or width of the runway, the altitude of the airport, or any of the other physical properties of an airport define capabilities of an airport, and preclude operations by aircraft that exceed those capabilities. It is for that reason that the 95,000-pound runway weight limitation was established in connection with a structural improvement of the

5

runway in 1983, in order to define its capabilities at the outset.  See Affidavit of Charles P. Sundby in Support of Defendants' Motion for Summary Judgment (filed November 26, 2003) ("Sundby Aff.") at ¶ 6.  Such definitions of the physical limits of an airfield are not "noise and access restrictions" within the meaning of ANCA.

The FAA agrees with this understanding of ANCA: "The FAA does not consider such a [runway weight] limitation to be a noise restriction within the meaning of 49 U.S.C. 47524." Dep't of Transp., Federal Aviation Adm'n, Order 5100.38B at ¶ 520(b) (May 31, 2002).  Indeed, the FAA has concluded that an ordinance memorializing a pre-existing runway weight limitation does not constitute a noise or access restriction as defined in ANCA because the runway weight limitation "reflects the new service capability" of the airport, and was adopted for safety reasons.[2]  The agency's understanding of the scope of ANCA is consistent with its language and purpose.  As the view of the agency charged with developing the national noise policy under ANCA, it is presumed to be reasonable and entitled to deference, even if other reasonable understandings of ANCA are possible.  See Chevron U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837, 104 S. Ct. 2778 (1984).

> B.    Even if ANCA Were to Apply to Runway Weight Limitations, the Weight Limit at Friedman Airport is Exempt From ANCA Because It Was Established Prior to October 1, 1990

ANCA only applies to noise and access restrictions that were not in effect on October 1, 1990.  In order to establish that the runway weight limitation at the Airport was not in effect on October 1, 1990, Tutor makes two contorted arguments.  First, he asserts that there must not have been a limitation in effect between 1986 and 1991 because he has identified some operations by aircraft with maximum gross takeoff weights over 95,000 pounds.  Second, he asserts that in

---

[2] Letter from Cynthia Rich, Associate Administrator for Airports, FAA, to J. Richard Studeny (Apr. 7, 1995) attached to Affidavit of W. Eric Pilsk in support of Defendant's Opposition to Plaintiff's Motion for Judgment (filed Dec. 22, 2003), Ex. 3.

1991, the Authority Commission adopted an entirely new weight-based restriction. Tutor can only support these arguments by ignoring the undisputed facts in the record.

It is *undisputed* that the Authority reported the 95,000-pound weight limitation to the FAA in 1983. Sundby Aff. at ¶ 6. It is *undisputed* that the 95,000-pound weight limitation was repeatedly published by the FAA on the Airport Master Record for the Airport prior to October 1, 1990. Affidavit of Richard Baird in Support of Defendant's Motion for Summary Judgment (filed Nov. 26, 2003) ("Baird Aff.") at ¶¶ 10-12. It is *undisputed* that the Authority itself acknowledged that there was a runway weight limitation in effect prior to October 1, 1990. Declaration of Jonathan Morse in Opposition to Defendant's Motions for Summary Judgment ("Morse Dec."), Ex. F, at p. FMA 00474. It is *undisputed* that Commissioner Mary Ann Mix understood that there was a runway weight restriction in effect prior to October 1990. Affidavit of W. Eric Pilsk in Support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment (filed Dec. 22, 2003), Ex. 1 at pp. 36-38; 87-92. It is *undisputed* that the official, published runway weight limitation has remained 95,000 pounds since 1983.[3]  Baird Aff. at ¶¶ 10-12. Indeed, Tutor's insistence that the Commission did not adopt a runway weight limitation in January 1991 proves this point: why would it need to adopt a new weight limitation

---

[3]   Tutor alleges that a 1986 entry on an internal FAA document (known as Form 5320) indicating that the pavement strength is 125,000 pounds brings this history into dispute. There is no information on who made that entry or on how the number was calculated. Moreover, there is no evidence that the Authority or the FAA ever used or accepted that figure. Indeed, every public statement by the Authority and every official act and publication of the FAA since 1983 has shown the weight limit to be 95,000 pounds. One entry on an obscure, internal agency form by an anonymous bureaucrat does not raise even a colorable factual dispute that would contradict every official and public action by the Authority and the FAA. Indeed, testimony by Mr. Sundby shows that neither the Authority nor the FAA was aware of that form, and that the FAA corrected the 125,000-pound entry to 95,000 pounds as soon as agency staff discovered the error. Deposition of Charles P. Sundby at pp. 118:16 – 121:6 (attached as Exhibit 1 to the Affidavit of W. Eric Pilsk filed herewith).

when one already existed?  Tutor simply cites no evidence to support any argument that the Authority Commission changed the runway weight limitation after 1983.

The fact that there were a few isolated operations of aircraft with maximum takeoff weights over 95,000 pounds does not mean that the limitation was somehow erased from the Airport Master Record and other official documents that reported the limitation.[4]  Those overweight operations show only that certain operators violated the limitation.  The subsequent actions of the Commission in December 1990 and January 1991 demonstrate nothing more than responsible government action:  when alerted to repeated violations, the Commission and staff increased vigilance in enforcing the existing runway weight limitation.  In a clear indication that the Authority was concerned about violations of the weight limit, the Commission directed in December 1990: "that staff be directed to determine the *overweight* aircraft currently landing at Friedman and *send letters informing them of the weight limits and of the fact that steps will be taken to restrict the landing of overweight aircraft.*" Morse Dec. at Ex. F, p. FMA 00474 (emphasis added).  That action is plainly a directive to staff to improve efforts to enforce a preexisting limitation, not the enactment of a new one.  The subsequent actions regarding Sport Tours relate solely to *enforcement* of the runway weight limitation, not to its creation.

In any event, as a matter of law Tutor cannot rely on mere lax enforcement of the weight limit in an attempt to prove the limit did not exist.  Cedars-Sinai Medical Ctr. v. Shalala, 177 F.3d 1126, 1130 (9th Cir. 1999) (delay in enforcement of existing policy did not estop

---

[4]   Tutor relies on the Declaration of James Baroni to support the assertion that there were operations by overweight Boeing 727 aircraft between 1984 and 1991.  That evidence, and Mr. Baroni's Declaration, must be stricken, however, because Tutor did not identify Mr. Baroni as a person with knowledge regarding the allegations in this case in response to interrogatories, nor did Tutor supplement his interrogatory responses to identify Mr. Baroni.  As more fully set forth in the Authority's Motion to Strike and Exclude Testimony By James Baroni and Plaintiffs' State Law Claim, the Court should strike Mr. Baroni's Declaration and exclude all evidence relating to the alleged 727 operations.

subsequent enforcement in the absence of proof that the government engaged in affirmative misconduct); LaTrieste Rest. and Cabaret Inc. v. Village of Port Chester, 40 F.3d 587, 590 (2d Cir. 1994) ("principles of laches or estoppel do not bar a municipality from enforcing ordinances that have been allowed to lie fallow."); Petrelli v. City of Mount Vernon, 9 F.3d 250, 256 (2d Cir. 1993) (granting summary judgment denying claim that prior non-enforcement of statute barred subsequent enforcement).  Moreover, enforcement of an existing rule will not be estopped if there is a risk to the health and safety of the public.  Watkins v. United States Army, 875 F.2d 699, 706-07 (9th Cir. 1989) (injustice to the party must outweigh harm to public if government not estopped).  Because it is undisputed that the Authority took action to improve compliance with the runway weight limitation in 1990 and 1991 in the face of evidence that overweight operations threatened the integrity of the runway, enforcement of the limitation in the interests of safety for all of the users of the Airport outweighs any inconvenience that Tutor may suffer.

The Authority's adoption of a motion in January 1991 relating to Airport Design Categories also does not raise a colorable issue as to whether a new weight limitation was adopted.  At most, that decision reflected an attempt to codify, albeit in different terms, the long-standing runway weight limitation.  As the FAA determined in the Millard case, the fact that an existing runway weight limitation is formally codified in some way does not constitute a new noise or access restriction within the meaning of ANCA.  Supra at p. 6.  In any event, whatever the intent of the January 1991 motion was, it is irrelevant here because Tutor was denied permission to operate the BBJ at the Airport based solely on aircraft weight, and not based on any Aircraft Design Category, and there is no dispute that the January 1991 vote did not change the runway weight limitation.

9

C.   Tutor Has No Private Right of Action to Enforce Any Alleged Violation
of ANCA

As demonstrated in detail in Defendants' Opposition to Plaintiffs' Motion for Summary

Judgment at pp. 8 - 16, Tutor has no private right of action to enforce ANCA.  In response, Tutor

argues that he has standing to enforce ANCA, Plaintiffs' Legal Brief in Opposition to

Defendants' Motion for Summary Judgment ("Tutor's Opp. Br.") at 21 – 23, and that he has a

right to attorney's fees pursuant to 42 U.S.C. § 1983, id. at 25.  Tutor rests these claims almost

entirely on ANCA's requirement that the public be given an opportunity to comment on any

proposed noise and access restriction, and then cites to a number of cases construing other

statutes.  Tutor's argument requires the Court to put the statutory cart before the horse.

First, ANCA's public comment requirement only applies where ANCA applies.   As

detailed above, ANCA does not apply in this case.  But even if the statute were to apply, Tutor

would secure his opportunity of public comment only through the ANCA process itself.

ANCA's public comment requirement does not create an *independent* federal right.

Second, the existence of an enforceable right turns on the specific language of the statute

at issue.   Tutor's reliance on cases construing the public disclosures requirements of the

Williams Act, and on statutes such as NEPA that also have public comment requirements, are

inapposite.  Focusing on the precise right Tutor claims here, the Supreme Court made clear that

the fact that one is particularly benefited by a statute does not create the kind of personal right

enforceable through Section 1983: "[I]t is *rights*, not the broader or vaguer 'benefits' or

'interests,' that may be enforced" through Section 1983.  Gonzaga Univ. v. Doe, 536 U.S. 273,

283, 122 S. Ct. 2268, 2275 (2002).  Indeed, the Court in Gonzaga expressly rejected any reading

of its earlier cases that would find a right enforceable under Section 1983 "so long as the plaintiff

falls within the general zone of interest that the statute is intended to protect. . . ."  Id. at 282-83.

See also Cannon v. University of Chicago, 441 U.S. 677, 692 n.13, 99 S. Ct. 1946 (1979) ("[T]he Court has been especially reluctant to imply causes of actions under statutes that create duties on the part of persons for the benefit of the public at large." (citations omitted)).

ANCA's generic requirement for *public* comment is a prime example of a duty for the benefit of the public as a whole. That public duty does not create an enforceable *private* right, as Tutor claims here. Because he has no enforceable federal rights, Tutor cannot enforce ANCA through a private right of action, nor can he use the generic comment requirement as a bootstrap to conjure a claim for legal fees or other remedies pursuant to 42 U.S.C. § 1983.

## III.   TUTOR'S CLAIM THAT THE RUNWAY WEIGHT RESTRICTION IS ULTRA VIRES UNDER STATE LAW IS WITHOUT MERIT

For the first time in this case, Tutor alleges that the Authority's decision to deny Tutor permission to land his BBJ at the Airport violated Idaho law on the grounds that no weight limitation was adopted by the Authority's governing Commission. Tutor's Opp. Br. at 20-21. There are several reasons why the Authority is entitled to summary judgment on this claim as a matter of law, as detailed below. As a preliminary matter, however, this claim must be dismissed because Tutor failed to identify it in response to Interrogatories intended to learn the legal and factual bases of Tutor's state law claim (Ninth Cause of Action), nor did Tutor plead in his Complaint a violation of the statutes he now claims were violated. As set forth more fully in the Authority's Motion to Strike Declaration of James Baroni and State Law Claim, dismissal is the appropriate sanction for failing to reveal this theory until after the close of discovery, and only a month before trial.

### A.   Tutor's State Law Claim is Time-Barred

Even if not dismissed as untimely for purposes of this litigation, Tutor's claim is barred by the applicable statute of limitations for challenging procedural irregularities of government

decisions. In essence, Tutor challenges the validity of the Commission's 1991 motion setting the Airport's design classification. Tutor's Opp. Br. at 21. Whether covered by the catch-all four-year statute of limitations set forth in Idaho Code § 5-224 or the shorter 30-day or 180-day periods for challenging decisions of governing bodies set forth in Idaho Code § 67-2347(4), it is clear that Tutor's challenge to any 1991 decision is time barred. Similarly, any challenge to that decision based on an alleged violation of 42 U.S.C. § 1983 would also be time barred. See Osborn v. Salinas, 131 Idaho 456, 958 P.2d 1142 (1998) (Idaho's two-year statute of limitations for personal injuries claims applies to claim under 42 U.S.C. § 1983); Hallstrom v. City of Garden City, 991 F.2d 1473 (9th Cir. 1993) (same).

Simply put, a plaintiff does not have a continuing right to challenge local government determinations. If that were the case, Tutor would be able voluntarily to dismiss and file his challenge again five, ten or twenty years from now. Moreover, Tutor's claims demonstrate the very reason why the statute of limitations should be applied. Tutor essentially bases his entire case on a lack of available documentation supporting a limitation (the 95,000-pound weight limitation) implemented twenty years ago.[5] Tutor chooses to ignore official FAA reporting forms, Airport Layout Plans, and other FAA and Airport documents all announcing the 95,000-pound limitation and instead focuses on the absence of documents memorializing the original 1983 decision. Under Idaho law, when there is evidence that a decision was in fact made — as the numerous actions of the Authority and the FAA indicate here — the absence of official minutes or other proof of official action is insufficient to overcome the *presumption* that the decision was made in accord with applicable procedures. Farrell v. Board of Comm'rs, 138

---

[5] Tutor's argument rests on the as*sumption* that there was no official action by the Authority Commission adopting a runway weight limitation based only on the review by Tutor's legal counsel of selected Commission meeting minutes, specifically covering only the years 1989 – 1991 and most notably *not* covering the time period before 1986. Morse Dec. at ¶ 3.

Idaho 378, 388, 64 P.2d 304, 314, (2002).  In Farrell, the court held that a facially valid permit

was not void because there was no record of County Board action because the facial regularity of

the permit created the presumption of Board approval.  See also State v. Clark, 88 Idaho 365,

377, 399 P.2d 955, 962 (1965); Sims v. Milwaukee Land Co., 20 Idaho 513, 119 P. 37 (1911)

(same).  It is precisely to extinguish such stale debates that the statute of limitations exists.

      To the extent Tutor has a basis to challenge a decision made by the Authority, it would

focus on whether his 2001 request for an exemption from the weight limitation was wholly

irrational or arbitrary.  Not only did Tutor not even bother to attend a hearing on the matter

called at his request, but this claim is also time-barred because Tutor failed to bring that action

with the 30 or 180-day periods provided in Idaho Code § 67-2347(4).

      B.     The Authority's Decision to Deny Tutor Permission to Operate His
             BBJ at the Airport Was in Conformance With Idaho Law

      On the merits, Tutor argues that because (1) he can find no evidence that a 95,000 pound

weight limitation was adopted by the Authority Commission and (2) the Authority's 1991

decision setting the design criteria for the Airport was not properly noticed, that the Authority's

decision to deny Tutor's BBJ permission to operate at the Airport based on its weight is

somehow ultra vires.  This fails on its own terms.

      Tutor's argument rests on a false premise.  The fact is that there is no legal requirement

that runway weight limitations be adopted by formal action of the Authority Commission.  The

Idaho statutes cited by Tutor do not impose such a requirement.  Idaho Code §§ 21-401 and 50-

321 are broad grants of authority for cities and counties to own and operate airports, and to

impose appropriate rules and regulations, without imposing procedural requirements on how

appropriate rules and regulations must be implemented.  Idaho Code § 31-710(4) requires that

County Boards conduct their business in public session, but does not mandate that every decision

of the County government be made by the County Board in public session.  The case cited by Tutor, Chambers v. Kootenai County Bd. of Comm'rs, 867 P.2d 989 (Idaho 1994), held only that quasi-judicial decisions regarding special use permits must be made based on record evidence and are subject to due process requirements for quasi-judicial proceedings as required by 67-6512.

Plainly, Tutor cannot demonstrate, as a matter of law, that runway weight limitations must be approved by the governing board of an airport.  There can be no dispute that a wide range of administrative matters are decided by informal action by administrative and executive personnel.  Such actions, affecting the operation of almost every government facility imaginable, clearly have a significant impact on the public.  As Tutor acknowledges, airport managers routinely issue Notices to Airmen advising pilots of access restrictions without formal action by a governing body (or without having to comply with ANCA's procedures).  Such routine administrative actions are in no way ultra vires or illegal merely because they were not adopted by a formal vote by a governing body.  Indeed, to impose such a requirement would bring governments (and the aviation system) to a grinding halt, as his theory would hold that virtually every administrative detail of every airport and other government installation would be valid only if approved by a legislative body.

In the case of the Airport's runway weight limitation, even if it was not adopted by the Commission, it is clear that it was adopted in the manner runway weight limitations are typically adopted.  In 1983, the airport engineer reported to the FAA that the runway weight limitation for dual wheel aircraft was 95,000 pounds.  Sundby Aff. at ¶ 6.  Subsequently, it was reported to the FAA on Airport Layout Plans and Master Plans, all of which were signed by an Airport Authority Commissioner.  Baird Aff. at ¶ 10.  The FAA approved those Plans and the FAA

14

published the runway weight limitation to the public on the Airport Master Record and in the Airport/Facility Directory. Id. at ¶ 12. That is how runway weight limitations are established, and Tutor has provided no legal authority to the contrary and no factual evidence that proper procedures were not followed. In this case, the Authority also secured a letter from the FAA affirming the Authority's ability to enforce its runway weight limitation, id. at ¶ 36, for which Tutor has no rebuttal.

## IV.   COUNT III: THE WEIGHT LIMITATION DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSES OF THE UNITED STATES OR IDAHO CONSTITUTIONS

Tutor does not dispute that access to an airport in a particular aircraft is not a fundamental right and that, for purposes of equal protection analysis, the Authority's decision is to be evaluated under the deferential rational basis standard. See Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment ("Authority's Opening Br.") at pp. 22 - 24. Thus, the question is whether the Authority's decision to deny Tutor permission to operate his BBJ at the Airport somehow draws an arbitrary distinction among aircraft.

Tutor now focuses his equal protection claim on just one argument: that there is in fact no runway weight limitation at this Airport at all! Instead, he asserts that the Authority has adopted only a restriction based on what are known as the Airport Reference Codes – a table of codes that the FAA publishes in a planning guide to assist airports in making sure that their facilities can accommodate different size aircraft. Tutor asserts that the Authority decided that it was going to design the airport to accommodate what are known as "B-III" category aircraft and that the Authority is attempting to restrict aircraft that do not meet that design criteria. Tutor's Opp. Br. at pp. 13 – 14.

While Tutor's argument is convoluted, it appears that he is arguing that because the Authority in fact allows aircraft both larger and smaller than the design category aircraft to operate at the Airport, the decision to limit the weight of aircraft violates equal protection. As elsewhere in his Opposition brief, Tutor's complicated argument plainly misunderstands how airports are designed and the legal import of the myriad technical documents that are used for ensuring safe and efficient design and operation of the nation's airports. Tutor's attempt to interject an irrelevant issue into this case demonstrates how he attempts to use immaterial facts to create the appearance of factual disputes.

First, the Authority's December 2001 decision to deny Tutor's request to operate the BBJ at the Airport was based *solely* on the weight of the BBJ and not on its Aircraft Design Group classification:

> After reviewing and briefly discussing the request made to allow the operation of a Boeing Business Jet at the Airport, the Board directed Staff to support current Airport policy which prohibits Airport use of aircraft which are above 95,000 pounds dual wheel takeoff weight.

Minutes of the Dec. 4, 2001 Meeting of the Friedman Memorial Airport Authority, Baird Aff., Ex. 9 at p. 6.

Second, Tutor has not been treated differently from any other potential Airport user. It is undisputed that at present the Authority does not permit operations by dual wheel aircraft with a maximum certificated takeoff weight over 95,000 pounds, and that includes aircraft operated by both the National Guard and the Vice President of the United States. Id. at ¶ 13; Plaintiffs' Response to Defendants' Statement of Material Facts Not in Dispute at pp. 3 & 7. These decisions are based solely on weight; aircraft design categories do not factor into the decision.

Third, Tutor's reference to some limited jet operations that occurred over a decade ago simply does not support a violation of the Equal Protection Clause. As detailed in the

16

Authority's Opening Brief, these operations were limited and stopped by the Airport Authority in 1991. More importantly, reports in 1990 and 1991 of damage to the runway caused by heavy operations, in addition to the 1997 reports of runway deterioration, in addition to recent determination by the Authority's engineer that the runway weight limitation could be even lower than 95,000 pounds, all justify different treatment today of aircraft over 95,000 pounds. Sundby Aff. at ¶¶ 11 - 16. Equal protection does not mandate allowing operations that reasonably could be believed to damage the Airport's runway in order to maintain some putative concept of consistency. Airtouch Cellular v. City of El Cajon, 83 F. Supp. 2d 1158, 1170 (S.D. Cal. 2000) (changed circumstances warrant different governmental responses to otherwise similar circumstances).

## V.    COUNTS I & II: THE RUNWAY WEIGHT LIMIT DOES NOT DEPRIVE TUTOR OF SUBSTANTIVE OR PROCEDURAL DUE PROCESS

### A.    Tutor's Desire to Fly the Personal Aircraft of His Choice Into the Precise Airport Of His Choice is Not a Property Interest Protected by the Due Process Clause

As declared in Clouser v. Espy, 42 F.3d 1522, 1540 (9th Cir. 1994) (quoting II Davis & Pierce, Administrative Law Treatise § 9.4 at 27), "a threshold question relevant to whether plaintiffs can state a due process claim is whether they have been denied a property interest. 'An interest must have its source in positive law — state common law, a statute, or a contract — in order to be characterized as "property" for due process purposes.'"  As explained in the Authority's Opening Brief, Tutor has no protectible property or liberty interest in flying the specific aircraft of his choice to the specific airport of his choice. See Authority's Opening Br. at pp. 29 - 31. Tutor offers no argument in rebuttal. Nor does he offer any legal authority or factual support that he has such a property interest. Moreover, even if he was entitled to some due process procedures, the procedures that were provided more than met the requirements of the Due Process Clause.

B.   Tutor Has Provided No Facts Or Legal Authority That Could Support His Substantive Due Process Claim

Tutor does not present any legal or factual argument that could support a finding that the Authority's decision to deny his BBJ permission to use the Airport violates some principle of substantive due process. In order to defeat summary judgment, Tutor would have to produce evidence showing that the runway weight limitation lacks a rational basis and could not possibly have been a reasonable decision. See Wedges/Ledges of California, Inc. v. City of Phoenix, 24 F.3d 56, 66 (9th Cir. 1994). The only evidence Tutor offers to challenge the runway weight limitation are the expert reports of Wayne Seiler which purport to support the conclusion that the runway might not fail if the BBJ were permitted to operate at a weight of 115,000 pounds or less. Tutor's Opp. Br. at 3.

Nowhere in those reports, however, does Tutor's expert opine that the Authority acted unreasonably in adopting the 95,000-pound weight limitation. Nor does he opine that the advice and observations of the Authority's Airport Engineer and Airport Manager regarding the condition of the runway, the effect of overweight operations on the runway and the validity of the 95,000-pound runway weight limitation were in any way unreliable, unbelievable or otherwise of such poor quality that the Authority could not reasonably have relied on that advice. Importantly, he does not contend that the BBJ would not damage the runway in any way. To preclude summary judgment based on Dr. Seiler's reports would invert the Constitutional test by striking down a decision only because there exists support for some alternative weight limitation, not because the existing weight limitation is utterly unsupportable or irrational. That level of judicial interference in setting weight limitations was rejected long ago. Sproles v. Binford, 286 U.S. 374, 388, 52 S. Ct. 581, 585 (1932).

C.     Tutor Received All of the Proceeds to Which He Was Entitled

Implicitly conceding that a direct challenge to the weight limitation cannot succeed, Tutor focuses his attack on a convenient straw man:  procedural issues relating to the January 1991 vote regarding the B-III Aircraft Design Group classification.  Tutor's Opp. Br. at 9-11.[6] First, as noted above, Tutor is not entitled to any procedural due process because he has not been deprived of any constitutionally protected property interest.   On that basis alone, Tutor's procedural due process claim must be dismissed.

Second, the runway weight limit was clearly adopted in 1983 and has been consistently accepted and published by the Authority and the FAA ever since.  Baird Aff. at ¶¶ 10  12; Sundby Aff. at ¶ 6.  The notice provided to the public more than satisfied any due process requirements.  As detailed supra at p. 14, the Authority followed all applicable legal procedures in adopting the runway weight limitation.  The 1991 motion regarding the design category of the airport is simply immaterial, as discussed supra.[7]  In any event, Tutor's claim that he was denied due process because he was not permitted to participate in a process in 1983 or 1991 or later even though he did not purchase his BBJ until 2000, is spurious.

To the extent Tutor is entitled to any process whatsoever, he received all that and more when the Airport considered his request to operate notwithstanding the weight limitation, conducted an engineering study related to that request, and gave Tutor multiple opportunities to

---

[6]     Tutor also claims that due process requires that he be provided notice of, and an opportunity to comment on, any proposed noise and access restriction because ANCA imposes such a requirement.  Tutor's Opp. Br. at 9.  This is however, no more than a bootstrap argument.  Because ANCA does not apply to the Authority's runway weight limitation (see discussion, supra), the right to comment provided for in ANCA also does not apply and certainly provides no freestanding property right protected by the Due Process Clause.

[7]     In any event, any challenge to that decision on state-law procedural grounds is time-barred, as discussed above.  See Idaho Code § 67-2347 (challenges to decisions must be made in 30 or 180 days after decision) and § 5-224 (4-year general statute of limitations).

address the Authority regarding his request. Baird Aff. at ¶¶ 27 – 28; 34 – 35. The fact that Tutor ignored each of those opportunities constitutes a waiver of any procedural due process claim he may have. See Krentz v. Robertson, 228 F.3d 897, 904 (8th Cir. 2000) waiver of procedural due process claim by refusing to participate in post deprivation proceedings); Leary v. Daeschner, 228 F.3d 729 (6th Cir. 2000) (same).

The cases cited by Tutor do not support his claim for additional procedures. In Armstrong v. Manzo, 380 U.S. 545, 85 S. Ct. 1187 (1965), the Court held only that a natural father was entitled to notice that his ex-wife's new husband sought to adopt his daughter, and that a post-decision motion for reconsideration, in which the burden shifted onto the natural father, did not cure the lack of prior notice. Obviously one cannot compare the legal loss of a daughter to a restriction on the use of a personal aircraft. In Alaska Airlines, Inc. v. City of Long Beach, 951 F.2d 977, 986-87 (9th Cir. 1992), due process was not provided because the airport manager could take away one or more limited, previously allocated landing slots. Unlike Tutor, the plaintiffs in both cases had a cognizable property right that was denied without notice.

## VI.   TUTOR IS NOT ENTITLED TO A JURY TRIAL

Based on Tutor's testimony in deposition that he has suffered no monetary damages as a result of not being permitted to operate the BBJ at the Airport, the Authority sought summary judgment on his damages claim. Authority Opening Br. at 50. Plaintiffs do not oppose this part of Defendants' Motion for Summary Judgment. To the contrary, in Plaintiffs' Response to Defendants' Statement of Material Facts in Support of Defendants' Motion for Summary Judgment at p. 23, Tutor readily concedes the point:

> Even though Tutor *may not have sustained any monetary damages,* he has been damaged by being deprived of the use of this airport in the BBJ, and has no adequate remedy at law to redress this situation. (emphasis added).

20

Tutor now seeks only equitable relief and attorney's fees. Id. Under long-established law, neither claim will support a demand for a jury trial. City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 719-20, 119 S Ct. 1624, 1643 (1999) (no right to jury trial where only injunctive relief sought); Brooks v. Cook, 938 F.2d 1048, 1051 (9th Cir. 1991) ("The award of attorney's fees [under 42 U.S.C. § 1988] is a matter of law for the judge, not the jury."). Accordingly, Tutor's demand for a jury trial must be stricken.

## CONCLUSION

Based on the undisputed material facts of this case, the Airport Authority is entitled to judgment as a matter of law on all claims asserted in the Complaint.

Respectfully submitted

Perry M. Rosen
Bar No. 2779
W. Eric Pilsk
Akin Gump Strauss Hauer & Feld, LLP
1333 New Hampshire Ave., N.W.
Washington, D.C. 20036
(202) 887-4000
(202) 887-4288 facsimile

Peter J. Kirsch
Kirsch Kaplan & Rockwell LLP
1675 Broadway, Suite 2300
Denver, CO 80202
(303) 825-7000
(303) 825-7005 facsimile

Barry J. Luboviski, Bar No. 2015
Luboviski, Wygle & Fallowfield, P.A.
460 Sun Valley Rd # 205,
Ketchum, ID 83340
(208) 726-8219

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served by overnight delivery

this 7th day of January, 2004 to the following:

James Martin
Moffatt, Thomas, Barrett, Rock
 & Fields, Chartered
101 S. Capitol Boulevard, 10th Fl.
Post Office box 829
Boise, ID 83701

Patrick E. Bailey
Jonathan Morse
Bailey & Partners
2828 Donald Douglas Loop North
Second Floor
Santa Monica, CA 90405-2959

W. Eric Pilsk